## The County of Wayne v. The City of Detroit.

*Constitutional law: Penal laws: Library Fund: City ordinance: Counties.* The Constitution requires that the "legislature shall provide for the establishment of a library in each township, and all the fines collected in the several counties and townships for any breach of the *penal laws,* shall be exclusively applied to the support of such libraries."—*Const. Art. 13, § 12.*

*Held,* that a city ordinance, which punishes, by fine and imprisonment, the commission of acts which are breaches of law, wherever committed, is a penal law in the sense of the constitution.

*Held further,* that the term counties and townships, as therein used, were meant to include all the municipal divisions of the state.

*Heard October 14th. Decided October 20th.*

Error to Wayne Circuit.

This was an action of assumpsit, brought by the County of Wayne to recover certain fines collected in the Central Police Station Court of the City of Detroit.

The cause was tried by the court without a jury on the following stipulation:

"It is hereby stipulated and agreed by and between the plaintiff and defendant in the above entitled suit, by their respective attorneys, that on the trial of said cause, the following facts will be admitted without further proof, and stand in all respects as if regularly and conclusively proven thereon, to wit:

*First:* That the plaintiff is a public corporation, under the corporate name of "The County of Wayne," and entitled to sue by its said corporate name.

*Second:* That the defendant is a municipal corporation, capable of being sued by its corporate name, which is "The City of Detroit."

*Third:* That the Central Police Station Court, so called, of said City of Detroit, is established and held under the provisions of an act entitled, "An act to revise the charter of the City of Detroit, approved February 5, 1857," approved March 12, 1861, and also under an ordinance of the City of Detroit, passed March 6, 1866, to which said ordinance reference is made for certainty.

*Fourth:* That the said Central Police Station Court, so called, held its first session, and first went into operation on the 2d day of April. A. D. 1866.

*Fifth:* That up to the commencement of this suit, said defendant, "The City of Detroit," has received from the said Central Police Station Court, so called, since the establishment thereof, and still retains the sum of $14,992$\frac{38}{100}$, and that all of said money, so received and retained by said defendant, was received in payment of fines imposed by said court for offenses tried and determined therein.

*Sixth:* That the said plaintiff has duly and legally demanded of said defendant the moneys so received by said defendant for said fines of said Central Police Station Court as aforesaid, as due the County of Wayne for the use of the several township libraries thereof, but that said defendant has refused to comply with said demand, and to pay over said moneys, or any part thereof to said plaintiff, and still does refuse so to do.

*Seventh:* That the fines hereinbefore referred to were imposed upon parties complained of, and convicted of some violation of a city ordinance. In all cases the complaints made against the parties in said court, charged the offense to be contrary to the ordinances of the city, and mentioned the particular or ordinance violated."

Judgment was rendered in favor of the defendant.

*G. V. N. Lothrop, Geo. Hebden,* Prosecuting Attorney, and *D. B. & H. M. Duffield,* for plaintiff in error.

1. The plaintiff claims these fines under article 13, section 12 of the constitution of this state.

That this includes cities as well as towns, has been virtually decided in the case of *The People, etc. v. Treasurer of Wayne Co. 8 Mich. 292.*

The only question in this case is, whether the term "penal laws," as used in the constitution, includes all those

municipal ordinances which are passed for the protection of society and the punishment of offenses against society.

What, then, do the words "penal laws" mean as here used in the constitution?

It is not confined to any restricted class, but includes all.

This being a constitutional, not a statutory provision, these words are to be given their natural and fullest meaning. — *Sedgw. on Const. and Stat. Law, p. 488.*

Plaintiff contends that any law deriving its authority from the supreme power of the state, either indirectly or directly, mediately or immediately, if it imposes a duty due to the public, and provides a punishment for the non-observance of that duty, is a penal law.

By whom that law is enacted, whether by the state directly or by a city through the authority delegated to it by the state, does not change its character or nature.

Whether it has primarily the supreme authority of the state to protect it, and whether it aims at the protection of the public, is the true and only test.

Any other is productive of a confusion of terms.

Compare the state law prohibiting an indecent exposure of the person with the ordinance on the same subject.

No distinction can be drawn between them. Each prohibits the act, and each provides a punishment for a disobedience of it.

Each is a rule of action, with a penalty if that rule is broken.

It is true that one is general and the other is local; but although local, it is not confined to any particular class of persons. All who come within the boundaries of cities, no matter from what place, state or country, are amenable to it, and must obey it, or suffer the punishment for disobedience.

The language of the constitution is, "all fines assessed and collected in the several counties and townships."

Why are the words "and townships" used if it only includes legislative enactments?

Would not a fine for a breach of the state law, though it was collected in a township, be collected in the county in which that township was? and could it be collected in any county unless it was collected in some township in that county?

Suppose the provision read, "all fines assessed and collected in the city of Detroit and county of Wayne" for any breach of the penal laws. Would it not mean all laws that were strictly penal, whether they were in force only in the city of Detroit or throughout the entire country?

It is claimed that plaintiff's construction is unjust to the city; but it is not. The city has four - fifths of all the fines for breaches of state laws that are collected in the entire county. The rest of the county are entitled to and should receive one - fifth of all fines for breaches collected in the city as well as the rest of the county.

But if, by prosecution under the city ordinances, they are taken from this library fund, the rest of the county can be deprived of all right to any share in the fines collected thereunder.

2. But plaintiff claims these fines for another reason.

No statute can take or direct any fund from the purpose to which the constitution has especially appropriated it. — *6 Ind. 83.*

The statute authorizing these fines to be paid into the city treasury does this.

The only offenses that can be tried in this Central Station Court, are those against the ordinances prohibiting vagrancy, drunkenness, and disorderly conduct. — *City Ordinance, March 6, 1866.*

Each of these offenses is a breach of the state law, and punishable as such. — *Sess. L. 1865, p. 147.*

17 MICH. — A².

A conviction and sentence under the city ordinance would bar a prosecution under the state law.—*3 Mo. 414; 1 Bishop on Cr. L. § 666; 29 Mo. 330.*

If a conviction of an offense in this Central Station Court for a violation of a city ordinance is a bar to a prosecution under the state laws for the same offense or act, clearly the fines assessed in that court must go to the School Library fund. Otherwise, the legislature, by changing the mode of collection, have diverted the fines from the object to which they are appropriated by the constitution.

*Gray & Moran,* and *T. Romeyn,* for defendant in error.

The *Constitution, Art. 4, § 38,* gives full power to the legislature to confer upon townships, and cities, and villages legislative and administrative powers.

For the exercise of this power, see *Revised Charter of Detroit, p. 168, § 298.*

The money thus collected, and in the city treasury, is now claimed by the county for library purposes, under § *12 Art. 13, Constitution.*

There are several questions connected with this inquiry, which are embraced in the following propositions:

1. The provisions of the *Constitution, Art. 13 § 12,* relative to fines collected in counties and townships, were not intended to embrace the City of Detroit.

The word "township," as used in the Constitution, sometimes includes cities, and sometimes is used to denominate townships proper, to the exclusion of cities—*11 Mich. 65.*

In this case the City of Detroit is not to be held to be within the constitutional provision, and the statutes founded on it, because—

*a.* Complete provisions for her school system had been founded and were in operation when the Constitution was adopted.—*Laws of 1842, p. 112.*

*b.* The former Constitution did not specify townships. It referred only to fines assessed in counties for breaches of

general penal laws.—*Art. 10, § 4.* This did not give to the township libraries the penalties for violation of township orders and by-laws.—*Rev. Stat. of 1838, p. 57; Laws of 1837, p. 121.* See, also, *Rev. Stat. of 1838, p. 104.*

*c.* The present constitution specifies "all fines collected in the several counties and townships." This addition of the term "townships" to counties can not, by fair interpretation, be held to include the City of Detroit, for,

*First:* That city had its own system, and was provided with schools. There was no occasion to give a strained meaning to the term "township" to admit her to the benefit of the school system.

*Second:* There were special provisions for township libraries—*C. L. § 2356*—and there was a distinct provision for a library in the city.—*Laws of 1842, pp. 113, 114, 115.*

*Third:* The townships may annex penalties to orders and by-laws—*Comp. L. § 497.* These may be sued for by the townships; and we may concede, for the purpose of this argument, that they should go to the library fund under the present constitution. These are distinct from the county fines as specified in *2 Comp. L. p. 1351.*

By fair construction the old constitution embraced only the county fines, unless the legislature had seen fit to appropriate others.

The present constitution adds township fines, but does not specify city fines, which are to go to the city treasurer. *Rev. Charter, p. 169, § 298.*

*Fourth:* There is good reason for this distinction, growing out of the greater expenditure for police purposes and for government in large cities.

*Fifth:* The legislature has given this construction to the Constitution, for these city fines are to be paid to the city treasurer. Other fines are to go to the county treasury; and it is only from the latter fund that payment is directed to be made for library purposes. This legislative construction of the constitution will not be lightly overruled.

Our conclusions on this proposition are that the system contemplated a distinct library in each township; that the first constitution required county fines to be appropriated to the support of these libraries; that the legislature in 1837 carried out this provision, and perhaps enlarged it; that the legislature of 1842, in regard to the City of Detroit, made special provision for that city, and provided in a special manner for one general library, and authorized the raising of money for that purpose by tax; and that the new constitution was not intended to embrace this special system in the City of Detroit.

2. If the provision in question — *Const. Art. 13, § 12,* embraces the City of Detroit, then, we insist, that the fund in question did not arise from fines assessed and collected for a breach of the penal laws, within the meaning of the constitution.

*a.* The Constitution specifies penal laws.

This means a general law of the state, enacted directly by the legislature, and with a fixed penalty. — *Espinasse on Penal Stat. pp. 5 to 8.*

*b.* The offenses from which these fines arose, were not, and are not punished with fines under the general law. They are simply violations of city ordinances. — *Comp. L. p. 493; Laws of 1865, p. 147.*

These fines were imposed for the violation of the city ordinance, and not for the violation of the general law of the State.

It is unnecessary to maintain — what we deem to be the law — that the same act may be an offense against the general statute, and also against a local ordinance, and may be punished in both aspects. — *3 E. D. Smith ( N. Y. Com. Pl.) 156; 1 Wend. 380; 5 How. 432; 9 Id. 569; 14 Id. 19; 14 Ala. 400; 6 Ind. 352.*

These decisions recognize the doctrine that, even if these offenses were violations of the general penal laws of the state, and finable as such, still the city could, on its own

account, collect and appropriate the fines for the violation of its authorized local ordinances.

3. If we go beyond the limitation of general penal laws, it must be on grounds that will include all penalties authorized to be imposed by corporations, or municipalities, or special bodies, under the laws of the state.

4. The constitution gives the right to this fund, if any right exists. It requires that all fines, assessed and collected in the counties and townships, for any breach of the penal laws, shall be exclusively applied to the support of such libraries.

These provisions apply to all fines for violation of penal laws.

No deduction can be made for expenses of collection, nor for shares to informers.

It is plain these provisions were not intended to apply to penalties for violation of local ordinances.

The Detroit ordinances are in principle analogous to those for violation of by-laws of private and municipal corporations, "*Noscitur a Sociis.*"—*8 Mich. 393.*

5. Except as regulated by the constitution, the disposition of these funds is under the control of the legislature, and the legislature, clearly, has not given these to the county treasurer for the use of school libraries.—See *Comp. L. § 2358; Rev. Charter, p. 169, § 298; 8 Mich. 393.*

The legislative construction of this and other similar acts will control this case, unless the repugnancy between them and the constitution be plain and clear.—*Cooley's Digest,* § *605, and following.*

COOLEY CH. J.

As I understand this case, all the fine moneys which the County seeks to recover from the City, in this suit, were imposed and collected under the authority of section 11 of chapter 13 of the Charter of Detroit, as amended in

1861. That section is as follows: "It shall be the duty of the Police Justice to attend at the police station house at such times as shall be prescribed by the Common Council; he shall summarily examine into the case of every person confined in said station house, and if he adjudge any person guilty of vagrancy, disorderly conduct, or any violation of the city ordinances relative to breaches of the peace, he may convict such person or persons thereof, and commit him or her to the Wayne County jail or House of Correction, for not more than six months, and impose a fine not exceeding $50; and in default of the immediate payment thereof, to commit such person or persons to the Wayne County jail, or to the House of Correction, for a term not exceeding six months, or until such fines be paid. All fines imposed shall be paid into the city treasury." And then follow other provisions not bearing on the present case.

In 1866, the Common Council of Detroit adopted an ordinance making it the duty of the Police Justice to attend at the City Hall, or any other police station house where the lock-up shall be, on every day of the week, Sundays excepted, at the hour of 7 o'clock A. M., to examine into, try and determine the case of every person confined in said station house, for *vagrancy, disorderly conduct, or drunkenness*, when the nature and circumstances of the case and complaint are such that the same may, and in the opinion of such justice should, be summarily disposed of without a jury, and, upon a conviction, to impose a punishment of not exceeding six months imprisonment, or $50 fine, besides the costs.

It will be perceived that this ordinance is not so broad in its scope as the section of the city charter above cited, and that instead of requiring the Police Justice to try and determine, at the time and place specified, the complaints for violations of the city ordinances relative to breaches of the peace, it limits his action to the cases of disorderly conduct—in which drunkenness is included—and vagrancy

and that these are the cases which the charter, without the aid of any ordinance, makes punishable under specific penalties.

The learned Circuit Judge, who decided this case in the court below, has assumed that "the persons convicted and fined had violated no general law of the state, but they had violated a city ordinance, and for the breach of this ordinance, and only for this, were the fines in question imposed and collected." In this, I think, he has been led into an error of fact, probably by the somewhat blind phraseology of the stipulation of counsel, which constituted the sole evidence before him. The ordinance, in providing for the punishment of vagrancy and disorderly conduct, except so far as it designated a place and an hour for hearing, was a mere re-enactment of the substance of the statute, and almost in the same words. No argument can be needed to demonstrate that the penal provisions of a law of the state are not superseded by an unnecessary municipal ordinance to the same effect, or that the penalty, when recovered in such a case, is to be regarded as recovered under the state law instead of under the ordinance.

Conceding this to be so, however, it is still insisted that the County is not entitled to the moneys, because the law under which the fines were imposed was in the nature of a mere regulation of municipal police, confined in its operation to the City of Detroit, and, therefore, not one of the penal laws which the constitution refers to, and which, it is argued, are those only which are of general and uniform operation throughout the state.

The constitution sets apart for a library fund all the fines collected in the several counties and townships, "*for any breach of the penal laws.*" That the law in question is a penal law is very certain. It is therefore clearly within the words of the constitution. To exclude it from the operation of those words we must import terms into the constitution in no manner indicated by the context, but

which we must assume were within the intent of the people, in adopting that instrument. We must assume that the people, when they said "any breach of the penal laws" meant only "any breach of such penal laws as are of general and uniform application." It seems to me sufficient to say of this position, that it requires of us to add to the constitution, qualifying words of our own, suggested only by outside considerations, which may or may not have been of weight with the convention in framing, or the people in adopting, that instrument, and that there is no accepted canon of construction which can justify this course.

If those actions, which, in the City of Detroit, are made punishable by fine and imprisonment under the statute in question, were not taken notice of by the law as offenses when committed elsewhere, other considerations would present themselves which are not now in this case. There would be room then for saying that the act undertook, within that city, to make one of those regulations which are usually made by municipal corporations for themselves for their own protection in regard to a matter which elsewhere would be one of indifference, but which disturbs the good order of the City by reason of local circumstances. It might be claimed, with much force, that that is not properly a penal law of the state, from whatever source emanating, which prohibits, in a particular locality, for local reasons, and as a mere police regulation, something which the general law treats as not criminal at all. But vagrants and disorderly persons are treated as offenders under laws which are applicable through the state at large, and which provide means to restrain their misconduct, and for their confinement in case they shall fail to give sureties for good behavior. This case, therefore, only requires us to determine whether that is a penal law in the sense of the constitution, which punishes by fine and imprisonment, in the City of Detroit, actions which are breaches of the law wherever committed, but which elsewhere are differently provided for

and guarded against; and upon this point we have no doubt.

The only remaining question is, whether the fines collected in the City of Detroit can be said to fall among those which are "collected in the several counties and townships." We think the Circuit Judge was correct in holding that they can. It is not necessary to declare that the word "townships" is used in a generic sense, including cities, since it is plain that the fines are collected within a county, and by these two terms, "counties" and "townships," the people, we think, meant to include, and have included, all the municipal divisions of the state. If this construction of the constitution works a hardship to the City of Detroit, in imposing upon that city the expense of collecting fines which must be shared with the country towns, so, on the other hand, the contrary construction would work injustice to the country towns by giving to the City of Detroit the fines collected in the Recorder's Court for breaches of the general laws of the state, while fines imposed in the country towns for breaches of the same laws must be shared with the city. The consideration of hardship can, therefore, have no weight in the case. The case, we think, is within the words as well as the intention of the constitution, and the plaintiff should have judgment.

CAMPBELL and CHRISTIANCY JJ. concurred.

GRAVES J.

I agree with the Chief Justice in holding that the plaintiff is entitled to judgment, and I assent generally to the reasoning by which he has been conducted to the result.

I desire, however, to avoid all possible misapprehension to rest my concurrence expressly upon the circumstances which attend the case.

I think the fines in question were, in substance and effect, imposed and collected under the eleventh section of

the thirteenth chapter of the charter of the City of Detroit, which specified the offenses and affixed the penalties; and not under the ordinance, which, however necessary for the purpose of requiring the magistrate to attend at the designated place and officiate thereat, could not, by repeating the whole or a portion, of the statute, transform the latter into an ordinance, or by its own inherent force supplement the statute or suspend its operation.

As the constitutional provision can only have practical operation while "penal laws" are operative, it will remain to be determined hereafter whether the legislature may not, in given instances, suspend their operation, and whether such suspension will not be implied in particular cases from express acts, authorizing the enactment of specific ordinances.

It will also remain to be determined, when the questions arise, whether the same act may not be the subject of prosecution, under both ordinance and statute, in certain cases; and in other cases whether it may not be the subject of prosecution under either, though not under both.