## Ex Parte Bud Fagg.

### No. 1426. Decided February 2, 1898.

38   573
38   654
38   660
38   668
38   670
38   675

**1. Municipal Charters—Court Created by—Constitutional Law—Subject of an Act Not Embraced in the Title.**

The Constitution requires that the subject matter of all legislative acts shall be embraced in the title. Where the caption of an act was, "An Act to incorporate the city of D., and grant it a new charter," Held, we would not expect, under said title or caption, to find in the act an article or clause creating a court for other than purely municipal purposes, much less an act creating a State court or vesting a municipal court with jurisdiction which pertains to a State court.

**2. Same—Constitutional and Statutory Law—Offenses Punishable by Imprisonment—Jurisdiction.**

By provisions of article 5, section 16, and also by provision of article 91, Code of Criminal Procedure, exclusive jurisdiction is given the county court of misdemeanors where the fine imposed is not less than $200, and by article 96, Code of Criminal Procedure, justices and other inferior courts have concurrent jurisdiction where the punishment is by fine only not to exceed $200. Held, the Legislature can not, by charter, create a city court with jurisdiction to try offenses which, under the above constitutional and statutory provisions, are confided to the exclusive jurisdiction of the county court, and which are punishable by imprisonment.

**3. Criminal Prosecutions—How Instituted and Conducted.**

Our Constitution provides, that all "prosecutions" shall be carried on in the name and by the authority of the State, etc. Const., art. 5, sec. 12. Proceedings by a municipal corporation to enforce fines and penalties for petty offenses, as are ordinarily enforced by them, are only quasi criminal, and are not prosecutions.

**4. Municipal Ordinances—Keeping and Exhibiting a Gaming Table or Bank.**

It is not competent for a municipal council to create by ordinance, and make it an offense against the city, the offense of keeping and exhibiting a gaming table and bank, which is, by law, already an offense against the State, punishable by fine and imprisonment; and a prosecution under such municipal ordinance can not be maintained in the face of our Constitution, which prescribes that all prosecutions shall be conducted in the name and by the authority of the State, and conclude, "against the peace and dignity of the State."

Appeal from Dallas.

This was an original application to the Court of Criminal Appeals for a writ of habeas corpus.

The opinion states the case.

*Oeland & Brown* and *W. P. Ellison,* for relator.—The complaint upon which petitioner was held to answer was styled "The City of Dallas v. Budd Fagg," and the judgment and commitment aforesaid all run in the same name.

The ordinance which petitioner was charged and convicted of having violated is in the exact language of article 382, Penal Code of the State of Texas, with the exception that in the line next to the last in said article, the words "city jail" are employed instead of the words "county jail," as in the article referred to.

The objections which petitioner interposes to the proceedings aforesaid may be stated as follows:

1.   The acts charged against him, constituting as they do an offense made penal by the Penal Laws of this State, the city of Dallas had no power under the laws to make the same acts an offense by ordinance and against the ordinance, as distinct from the State law.   The ordinance in such case is unnecessary, nugatory, and inoperative.

2.   That the city court has no power to try offenses against the State law.

3.   If it has power, it must proceed in the name and by authority of the State of Texas, and all writs and processes must run in the name of the State of Texas, and conclude, against the peace and dignity of same.

4.   The ordinance relied on is void, because the council in enacting the same did not pursue the charter power in regard to the penalty prescribed by the charter in such case.   Petitioner's first ground of objection may be again subdivided, as follows:

(1.)   Because when any city enacts an ordinance covering some offense denounced by the Penal Code, such ordinance is unnecessary, superfluous, and inoperative, and the offense still remains an offense against the State law alone, and not against the ordinance which is superseded by the State law.

(2.)   Because by common law and usage, and by express statutory provisions, cities can only impose such penalties as can be enforced by other proceedings civil in their nature, if not in form, and can not punish acts criminal in their nature and by imprisonment, which can only be enforced by a prosecution criminal in its nature.   The jurisdiction of municipal corporations is confined to petty offenses, which may be dealt with in a summary manner, and in which, at common law, the defendant was not entitled to a jury.   The power to enact ordinances of municipal by-laws is legislative power.   See 1 Dill. Mun. Corp , sec. 308.   The legislative power, like the judicial and executive power of the State, is an inseparable unit, and "where the sovereign power has lodged the authority, there it must remain."   Legislative powers thus lodged can not be delegated by the Legislature.   Cool. Const. Lim., 5 ed., p. 139.

5.   To this general maxim there is an exception in the case of the powers which may be delegated to municipal corporations, which exception has its origin in the universal custom of delegating certain limited powers of local regulation to such municipalities.   Cool. Const. Lim., pp. 140, 228.   This usage has engrafted the exception on the rule, to the extent that such power may be delegated for process of local government only; the powers of a more general nature must be retained by the State and can not be delegated.   Cool. Const. Lim., 228, note 1.   Municipal by-laws are subordinate to the general laws of the State (Cool. Const. Lim., 241; 1 Dill. Mun. Corp., p. 368); nor can the presumption be indulged that the Legislature intended that ordinances passed by the city should be superior to, and take the place of, the general law of the State upon the same subject.   17 Am. and Eng. Corp. Law, p. 237, and note.   The municipal corporation in such case is superfluous and unnecessary. Wayne County v. Detroit, 17 Mich., 400; 73 Cal., 142; 26 Minn., 507.

"State laws and city ordinances all rest upon the same ultimate authority —the people of the State—and they aim at the same evils." 73 Cal., 142. "The ordinance  *  *  *  was a mere re-enactment of the substance of the statute and almost in the same words. No argument can be needed to demonstrate that a penal provision of a law of a State is not superseded by an unnecessary municipal ordinance to the same effect, or that a penalty, when recovered in such case, is to be recorded under the State law, instead of under the ordinance." Judge Cooley in Wayne County v. Detroit, 17 Mich., p. 399.

While this latter doctrine is not in harmony with the great weight of authority elsewhere, we submit that it is sound on principle, in accord with the nature of the powers conferred on municipal corporations, and is supported by the principles announced in the case of Harris County v. Stewart, 91 Texas, 133, and has become the settled doctrine of law in this State by virtue of express statutory enactment. Code Crim. Proc., art. 931.

By the weight of authority referred to, a conviction has been created, alike illegal and unjust in its tendency, to the effect that a municipal corporation possesses a quasi sovereignty of its own, separate and distinct from the State, and that the same criminal act may constitute two offenses, one against the municipality and one against the State. 1 Dill. Mun. Corp., sec. 368; 1 Cool. Const. Lim., 242.

Even this court has at one time announced this monstrous proposition, when the question was first presented in Bingham v. State, 2 Texas Criminal Appeals, 21. This court declined to decide it, but in the year following (1878) the question was again presented, and the court then followed the weight of authority as above stated. Hamilton v. State, 3 Texas Crim. App., 643. This was a grave constitutional guarantee frittered away by the judicial sophistry of the courts; but other courts, perceiving the true nature of municipal corporations, and mindful of the purpose and spirit of the constitutional guarantee, that "No person shall be again put on trial for the same offense after a verdict of 'not guilty' in a court of competent jurisdiction," and other similar guarantees, have boldly announced the true principle applicable to such cases, as follows: "The municipality is the agent of the State, and the prosecution of an offender under this ordinance is a bar to the prosecution under the laws of the State, because it is virtually the exercise of the power of the State in either case—in the one directly and in the other indirectly." 11 Am. and Eng. Enc. of Law, 955; State v. Cowen, 29 Miss., 330; Gowen v. State, 29 Mo., 330; State v. Thornton, 37 Mo., 360; Cool. Const. Lim., p. 243, and note; 14 Pac. Rep., 405; 1 Dill. Mun. Corp., sec. 368, and note; State v. Flint, 28 Atl. Rep., 28. "I deny that the municipal corporations can legislate upon a case fully covered by the State law." Lumpkin, J., in Savannah v. Hussey, 21 Ga., 80, 86; and see the language of Judge Cooley in Wayne v. Detroit, supra. And within less than one year after this court announced the doctrine of Hamilton against the State, the Legislature at its first opportunity interposed to check and correct the

evils and injustice of that decision, and has by legislative enactment declared the true rule in the Code of Criminal Procedure, article 931, of which we understand the legal effect to be that there can be but one offense by one act, although there may be both an ordinance and a statute prohibiting the act.

The extent of legislative powers which may be delegated to municipal corporations are such as they have acquired by immemorial usage and custom, and by such usage and custom the powers of municipal corporations surrounding the punishment of offenses are such as related to minor or petty offenses punishable by pecuniary fine and in summary manner.

We have elsewhere shown that the courts have uniformly held that it was competent for the State Legislature to create municipal corporations with power of local government, and to authorize them to adopt ordinances or by-laws, with appropriate penalties for their violation; the power to do this includes, by fair implication, the power to authorize violations of ordinances (where not criminal in their nature) to be tried and determined in a summary manner by a local or corporation tribunal. 1 Dill. Mun. Corp., 428; Board of Police v. Giron, 16 So. Rep., 190; McInery v. Denver, 29 Pac. Rep., 516.

By the authorities just cited, and a number of others which could be cited, the better rule undoubtedly is that the State is limited in its right to delegate legislative authority to municipal corporations, and can only delegate such authority to the extent of legislating locally for the punishment of minor or petty offenses. Ever since the year 1857, if not earlier, it has been the doctrine, by express legislative enactment, and by way of distinguished distinction between penal offenses, that the offenses over which the city court had jurisdiction were petty offenses and such as a justice of the peace could try. Penal Code, arts. 57, 98.

But by the express provisions of the Constitution, this common law and customary limitation upon the powers of municipal courts has been expressly preserved in this State, which provisions must be construed in the light of the common law rules on the subject and the established practice, usage, and policy of the State in reference thereto.

"All prosecutions shall be in the name and by the authority of the State." Const., art. 4, sec. 12.

Every exercise of judicial power by a municipal corporation is as much an exercise of such power by the State as though exercised through its own officers. Harris County v. Stewart, 91 Texas, 133.

Every limitation upon the judicial power of the State is as much a limitation upon such power when exercised by an agent as when exercised by it directly. 1 Desty on Tax.; Knowlton v. Supervisors, 9 Wis., 510; 1 Dill., sec. 430.

The provision applies to all prosecutions, not to all prosecutions except prosecutions by the city, etc. Railroad Tax Cases, 13 Fed. Rep.

"A prosecution is a criminal proceeding at the suit of the government." 100 U. S., 269. "Applies to criminal actions." Sparta v. Lewis, 23 S. W. Rep., 183, 42 Iowa, 406.

The proceeding by a municipal corporation to enforce such fines and penalties as are ordinarily but by usage enforced by them are not criminal; they are civil in their nature, and are not prosecutions. 17 Am. and Eng. Enc. of Law, p. 260, note; Sparta v. Lewis, 23 S. W. Rep., 183.

But whenever imprisonment is a part of the punishment which may be imposed, and which is also imposed by statute or common law, the proceeding is criminal in its nature. 1 Dill., pp. 432, 427, note; Huron v. Carter, 57 N. W. Rep., 947; Wayne County v. Detroit, 17 Mich., 400; Davenport v. Bird, 34 Iowa, 524; Sioux Falls v. Kearby, 60 N. W. Rep., 156; Sparta v. Lewis, 23 S. W. Rep., 183.

And in such case prosecution must be in the name and by the authority of the State, and all process must run in the name of the State. Leach v. State, 36 Texas Crim. Rep., 248; Ex Parte Boland, 11 Texas Crim. App., 159; 1 Dill. p. 429; City of Barborough v. Sherman, 61 Cal., 57; State v. Bartlett, 35 Wis., 287; Plattville v. McKerhan, 54 Wis., 487; Brownville v. Cook, 4 Neb., 101.

In the case last cited was a prosecution by the city of Brownville under an ordinance, and the defendant was convicted, and the penalty imposed was only $25 and costs, but in default of payment that the defendant should be committed to the city prison. Yet in this case the court held the proceeding to be a prosecution, and because it was brought in the name of the city, and not in the name of the people of the State, as required by the Constitution, the proceedings were held to be void. We submit that the reasoning in support of this view—which goes to greater length even than we desire in this case—is unanswerable, and we respectfully call the court's attention to the language of the court in that case on pages 106 and 107.

Such limitations upon the power of delegation of legislative authority as are fixed and ascertained by usage and custom and State policy are to be found by necessary implication in article 11, section 4, of the Constitution.

"All fines, forfeitures, penalties, and other dues accruing to cities and towns shall be collectible only in current money." This provision is applicable to all cities in this State. Werner v. Galveston, 7 S. W. Rep., 726; Endl. Interp. of Stats., sec. 330.

The power of the Legislature to incorporate cities is not derived from the Constitution; the provisions of that instrument are limitations on the power which it otherwise possesses. Harris County v. Stewart, 91 Texas, 133.

The power to punish an offense by imprisonment has never been possessed by a municipal corporation unless expressly conferred. 1 Dill., sec. 353. And the express enumeration of certain powers of imposing penalties excludes others not enumerated. 1 Dill., sec. 339.

The language of article 11, section 4, of the Constitution, by necessary implication, prohibits the power of municipal corporations to impose the

penalty of imprisonment.   Cotter v. Doty, 5 Ohio, 396; Cool. Const. Lim., pp. 73, 77, 81; 1 Dill., sec. 339, and cases cited, note 4.

We firmly believe, under the second objection which we have made at the beginning of this argument, that we are clearly borne out by the doctrine so ably announced by this court in Leach v. State, 36 Texas Criminal Reports, 248.   While there seems to be an unfortunate conflict between that case and the recent case of Harris County v. Stewart, decided by the Supreme Court, we believe it is susceptible of demonstration that Leach v. State is sound, and Harris County v. Stewart is fallacious.

The doctrine announced in Leache v. State, to the effect that municipal courts as such have no power to try offenses against the State laws, is the doctrine upon which we rely in this case.   That the exercise of judicial power by a municipal corporation is the exercise of the judicial power of the State is announced in the Stewart Case, we concede; but we submit that when the Constitution provided for the State judiciary and for the creation of State courts, it also contemplated in express terms the creation of cities by charter, and of course the establishment of municipal courts as germane to and a part of the charter.   Such municipal courts, with such powers over petty offenses as had been exercised by them in this State since its organization, was in our opinion clearly in the contemplation of the Legislature as something separate and distinct from that judiciary system which was so carefully provided for in other portions under different articles of the Constitution.

*A. P. Wozencraft* and *T. A. Work,* for respondent.—1. The title of the Dallas city charter is sufficient, because a city court is an ordinary and necessary incident to a city.   Morris & Cummings v. State ex rel. Gussett, 62 Texas, 741; Tadlock v. Eckles, 20 Texas, 792; Breen v. Railway, 44 Texas, 305; Giddings v. San Antonio, 47 Texas, 556; Cool. Const. Lim., 146; Dill. Mun. Corp., 4 ed., 39, 427, 51; 15 Am. and Eng. Enc. of Law, p. 999, note 2, and authorities there cited.   These authorities are so conclusive that it is not thought proper to argue the question.

2.  A city charter providing that process of the city court shall run in the name of the city, and that prosecutions for violations of city ordinances shall be in the name of the city, is constitutional and valid.

The foregoing principle of law has been several times announced by courts of the highest authority acting under Constitutions exactly similar in this respect to the Constitution of Texas, as well as by this court.

The Constitution of the State of Iowa contains this provision: "The style of all process shall be 'The State of Iowa,' and all prosecutions shall be conducted in the name and by the authority of the same." Const. of Iowa, art. 5, sec. 8.   The charter of the city of Davenport in terms authorized prosecutions for violations of municipal ordinances to be instituted in the name of the city, and it was contended that this portion of the charter was in conflict with the above quoted provision of the Constitution.   But the Supreme Court in the case of Davenport v. Bird, 34 Iowa, 524 (1871), held otherwise.   It was a prosecution in the name of the

city against the defendant for a violation of an ordinance of a police nature, but for which, under the charter, the city was authorized to punish by a limited fine and imprisonment. In giving the opinion of the court, Miller, Judge, says: "Is it necessary, under the Constitution, that all prosecutions for violations of municipal police ordinances shall be conducted in the name and by the authority of the State of Iowa? Or, in other words, is that clause of the city charter of Davenport, which directs that 'all suits, actions, and prosecutions be instituted, commenced, and prosecuted in the name of the city of Davenport,' in conflict with the constitutional provision before referred to? We are of the opinion that it is not. This clause of the Constitution occurs in article 5, which treats of the judicial department of the government. This article vests and defines the judicial power of the State, establishes the tenure of office of the judges, and defines the mode of their election; fixes their salary and limits the number of judicial districts; provides for the election of an Attorney-General, and other matters pertaining to the judicial arm of the State, among which is the clause under consideration. From all this it seems manifest that the requirement 'that all prosecutions shall be conducted in the name of the State of Iowa,' contemplates such criminal prosecutions as shall be instituted and prosecuted before the tribunals which are provided for in that article of the Constitution under the statutes of the State. It is fitting and appropriate that prosecutions for violations of the criminal laws of the State should be carried on in the name of the government. But there is no fitness or propriety in requiring the State to be a party to every petty prosecution under the police regulations of a municipal corporation. Such a construction of this article of the Constitution seems to us to be unwarranted, and not intended by the framers of the Constitution. It was held by the Supreme Court of Pennsylvania that the word 'process,' in the twelfth section of the fifth article of the Constitution of the State, which provides that 'the style of all process shall be the Commonwealth of Pennsylvania,' was intended to refer to such writs only as should become necessary to be issued in the course of the exercise of that judicial power which is established and provided for in the article of the Constitution, and forms exclusively the subject matter of it. On the same principle we are of the opinion that the word 'prosecutions,' in the eighth section of article 5 of our Constitution, was intended to refer only to such criminal prosecutions under State laws as should be cognizable by the judicial power, which is established and provided for in that article, and that it was not intended to include prosecutions under ordinances of municipal corporations cognizable before police magistrates." And the same view is held by the Court of Appeals of Kentucky. Williamson v. Commonwealth, 4 B. Mon. (Ky.), 146 (1843).

The Court of Criminal Appeals of Texas has always held the same view. It has expressly held that prosecutions could not be had in city courts in the name of the State. Leach v. State, 36 Texas Crim. Rep.. 248; Ex Parte Knox, 39 S. W. Rep., 670. And has always entertained·

jurisdiction of appeals from cases prosecuted in the name of cities in city courts, sometimes affirming and sometimes reversing them, but never questioning the right of the cities to so prosecute them. Such cases are too numerous to need to be specifically mentioned here. This court has expressly held that such cases can be prosecuted in the name of cities. Ex Parte Freeland, ante, p. 321; Ex Parte Estes, decided by Judge Davidson, at Dallas, in July, 1897.

Article 11, section 5, of the Constitution of Texas, authorizes the Legislature to grant special charters to cities having over ten thousand inhabitants.

The Supreme Court of Texas, in City of Dallas v. Western Electric Company, 83 Texas, 243, says: "These charters are to be considered as a whole within themselves, without reference to any other law." The city charter of the city of Dallas authorizes the city of Dallas to prohibit gaming or exhibiting games, and pass such ordinances as may be necessary to carry such power into effect. Dallas City Charter, secs. 103, 164.

This power is usually given to cities throughout the United States. The fact that the Legislature has prohibited the vice of gambling in a general law does not prevent the city of Dallas from prohibiting it by an ordinance passed under express authority of its city charter. The same power that passed the general law also enacted the city charter, and the Dallas city charter was enacted by the Legislature subsequent to the time the general law was passed. The decisions of this court bear out this view. See Ex Parte Boland, 11 Texas Crim. App., 159; Ex Parte Wilson, 14 Texas Crim. App., 592; Ex Parte Oliver, 3 Texas Crim. App., 345. The Supreme Court of Texas holds the same opinion. See Bigby v. Tyler, 44 Texas, 351.

That great jurist, Judge Cooley, says in his work on Constitutional Limitations, sixth edition, page 239, in speaking of city charters: "The charter may exclude the general law and allow the corporation to pass local laws at its discretion which may differ from the rule in force elsewhere. But in these cases the control of the State is not excluded if the Legislature afterwards sees fit to exercise it. But the State law and bylaw may both stand together if not inconsistent." This language has been cited with approval by this court. Hamilton v. State, 3 Texas Crim. App., 646. And it is supported by the following eminent authorities: City of St. Louis v. Bentz, 11 Mo., 61; City of St. Louis v. Cafferata, 24 Mo., 94; Rogers v. Jones, 1 Wend., 261, to which attention is specially called; Levy v. State, 2 Ind., 281; Mayor of Mobile v. Allaire, 14 Ala., 400; Elk Point v. Vaughn, 1 Dak., 113; People v. Hanrahon, 75 Mich., 611.

The Constitution does not prohibit the exercise of this power by the city of Dallas, and who will doubt the wisdom of the Legislature in giving it to the city? It is submitted that the welfare of the city is more directly affected by this vice than that of the country or State at large. The court will take judicial notice of a fact so well known as that extensive gambling seldom prevails except in cities. It is further submitted, that

there is no reason that this court should at this time change its uniform construction of the Constitution. The charge against·Bautch, decided in Bautch v. City of Galveston, 27 Texas Criminal Appeals, 342, was as important as the one against Fagg in this, and in that case, on page 346, the court says there is nothing in the Constitution against the doctrine we here invoke. The Legislature is presumed to have passed the Dallas city charter in the light of the former decision of this court. The Supreme Court of the State of Texas, in the case of Giddings v. San Antonio, 47 Texas, 557, says: "While it is of the highest importance that the courts should be open at all times for the assertion of rights that are believed to be well founded, it would be unfortunate that it should be thought practicable on a doubtful question to easily procure a change of decision in the members who might from time to time compose the Supreme Court."

The position of the city of Dallas in this case is supported by an unbroken line of legislative and judicial constructions. That this construction is entitled to great weight has been frequently stated by all courts and authorities. We refer the court, however, specially to the case of State ex rel. Guergin v. McAllister, in 88 Texas, 284. As to the power of the Legislature to grant to cities the right to imprison as a punishment for offenses we appeal to the same Constitution, and call the court's attention to article 464 of the Revised Statutes of Texas, which was originally enacted in 1875, before the present Constitution was adopted, and has been carried forward in the two Revised Statutes adopted since then. This section expressly authorizes cities under ten thousand inhabitants to punish offenders by imprisonment.

In answer to the applicant's contention that imprisonment in the city jail is not the same punishment as in the county jail, we submit that, as on his other claims, the point is settled against both by the statutes of Texas and the decisions of this court.

Article 24, Criminal Code of Texas, says: "The word 'jail' means any place of confinement used for detaining a prisoner."

To.the same effect is Welch v. State, 25 Texas Criminal Appeals, 580. Certainly the city jail is such a place, and a county jail is that and nothing more. It is further certain, from the context of the Dallas city charter, that it was intended that prisoners of the city should be confined in the city jail. See Dallas city charter, sec. 78, Special Act 25th Leg., regular session.

The whole defense of the applicant is technical and unsupported by Texas authorities.

It would seem that the propositions seriously insisted upon are: (1) The Legislature can not confer jurisdiction upon the Dallas city court to try offenders charged with keeping and exhibiting games and gaming tables. (2) That if such jurisdiction can be conferred, the Legislature can not authorize the Dallas city court to pass ordinances punishing such offenses, and that the ordinance under which this prosecution is had, is for that reason void. (3) That inasmuch as the ordinance is void, the

prosecution, if had at all, must be under the general Penal Code, and therefore the affidavit and process must run in the name of the State of Texas, and must be by affidavit and information, and not by affidavit alone.

We wish to cite the following authorities for respondent in addition to those cited in our original brief:

As to the holding of the Supreme Court of the State of Texas on these questions, and they are really but one question, viz., the power of the Legislature over cities of over 10,000 inhabitants, we invite the careful attention of the court to the opinion in the case of The City of Dallas v. Western Electric Company, 83 Texas, 343, and the case of State ex rel. Guergin v. McAllister, 88 Texas, 284.

As to the opinions of this court sustaining our position, we wish to say that they are very numerous, and according to our view, without an exception.

In the case of Davis v. State, 2 Texas Criminal Appeals, 431, this court says: "The people in framing the Constitution committed to the Legislature the whole law making power of the State which they did not expressly or impliedly withhold." The case is well considered and cites numerous authorities.

In Ex Parte Wilson, 14 Texas Criminal Appeals, 596, this court says: "It may be said that the constitutional exceptions with regard to cities of more than 10,000 inhabitants take such cities out of the purview of the law whenever their amended charters provide a rule different from the general law or confer power greater than that given by the general law. The one is as much the act of the Legislature as the other, and when not obnoxious to constitutional objection, any special act of the Legislature is valid and binding, as much so as a general law, to the extent of the power granted by it. If inconsistent with or contrary to the general law, it stands and must be considered as an exception to it."

In Handley v. State, 16 Texas Criminal Appeals, 447, this court says: "It has been and is now held by this court that under the charter of the city of Dallas the mayor's court has concurrent jurisdiction of this offense with the county court."

In Baldwin v. State, 21 Texas Criminal Appeals, 591, this court says: "Nothing but a clear violation of the Constitution, a clear usurpation of power prohibited, will justify the judicial department in pronouncing an act of the legislative department unconstitutional and void."

The judiciary article of the Constitution appears to have been framed with a view to carefully avoid any possible interference by that article with the powers granted to the Legislature under article 11, section 5, of the Constitution, relative to municipal corporations. See sec. 1, art. 5, Const. of Texas. Article 931, Code of Criminal Procedure, which article has been in force since 1879, contemplates that jurisdiction may be given the city courts to punish acts which are also offenses against the State law, and that city councils may be authorized to pass ordinances defining and punishing such offenses. It says: "And no person shall be pun-

ished twice for the same act or omission, although such act or omission may be an offense against the penal laws of the State as well as against the ordinances of such city or town." And the lines following indicate that the ordinances of cities are expected to inflict a similar punishment for State offenses as is prescribed by the statutes, just as is done in this case.

This legislative construction is entitled to great weight, it being cotemporaneous with the adoption of the Constitution.

In the case of Hamilton v. State, decided the year before the above article of the Code of Criminal Procedure was enacted, says: "From the foregoing authority we are of the opinion that a State law and an ordinance of a town or city corporation, not inconsistent with each other and in harmony with the Constitution, may stand together."

See also Cornelius v. City of Dallas, 37 Texas Crim. Rep., 309; Dill. Mun. Corp., par. 429, and note, and pars. 326, 328, 568; Cool. Const. Lim., p. 200, et seq.; Van Buren v. Wells, 22 Am. St. Rep., 214.

HENDERSON, JUDGE.—This is a proceeding on an original habeas corpus, granted and made returnable before this court. The petition alleges that applicant is illegally restrained by one J. C. Arnold, chief of police of the city of Dallas, by virtue of a certain judgment of commitment of the city court of Dallas. The agreed statement of facts contains a copy of the judgment and writ of commitment, the complaint on which the applicant was tried, together with a copy of the ordinance under which the prosecution and conviction were had. Said ordinance follows the State law on the subject, and makes it an offense against the city of Dallas for any person to keep or exhibit, for the purpose of gaming, any gaming table or bank of any kind or description whatever, or any table or bank used for gaming, etc.; and the punishment imposed is a fine of not less than $25, nor more than $100, and imprisonment in the city jail for not less than ten nor more than ninety days, which is the same in amount and degree as that provided under the State law or statute on the subject, which makes gaming an offense against the State laws. There was no information filed against defendant, but the complaint on which he was tried is as follows: "The State of Texas, County of Dallas, City of Dallas. Personally appeared before the undersigned authority, E. F. Gates, who, after being duly sworn, deposes and says that Bud Fagg, in the city of Dallas and State of Texas, on the 9th day of October, 1897, and before the filing of this complaint, did unlawfully keep and exhibit, for the purpose of gaming, a gaming table and bank, to wit, a faro bank, contrary to ordinances in such cases made and provided. [Signed] E. F. Gates." Sworn to and subscribed before T. L. Lawhon, city secretary. On the trial the relator Fagg was convicted, and his punishment assessed at a fine of $25 and ten days imprisonment in the city jail.

The contention of the applicant is that said conviction, being under an ordinance, and in the city court of Dallas, is illegal and void: (1) Because the statutes of the State make the exhibiting of a gaming table for

the purpose of gaming an offense against the State, and it is not compe-
tent for the Legislature to grant to a municipality authority, by ordi-
nances, to supersede the State law on the subject; (2) because the city
court of Dallas has no authority to try offenses against the State law; (3)
and, granting the city court of Dallas has the power to try State cases, it
must proceed as a State court. In the view we take of this question, it is
not necessary to discuss the last two propositions, inasmuch as the offense
alleged against applicant was prosecuted merely as a violation of the city
ordinances; and we are accordingly confronted with two questions: (1)
Does the charter of Dallas authorize the city council to pass an ordinance
making said offense of keeping and exhibiting a gaming table for the
purpose of gaming an offense against the city? (2) If the charter grants
this power, did the Legislature have the power, under the Constitution
and laws of this State, to confer upon the municipality of Dallas au-
thority to make the exhibiting and keeping of a gaming table for the pur-
pose of gaming an offense against the city?

We might observe here that section 24 of the new charter of the city of
Dallas, granted by the Twenty-fifth Legislature, gives to the city court of
Dallas jurisdiction as follows: "(1) To try, hear, determine, and punish
all misdemeanors over which the Dallas city court now has jurisdiction.
(2) To try, hear, determine, and punish all misdemeanors arising under
the provisions of this charter; to have concurrent jurisdiction with the
State courts over all misdemeanors against the State laws, committed
within the city limits, except theft and those involving official miscon-
duct, and to have exclusive jurisdiction over disorderly houses and female
vagrants." But, as stated, it is not necessary to discuss this provision
with reference to the jurisdiction of the city court of State offenses, prose-
cuted as such; and so it does not become necessary to discuss the bearing
of the case of Harris County v. Stewart, 91 Texas, 133, or to review the
case of Leach v. State, 36 Texas Criminal Reports, 248; nor will we do
so, further than to suggest that we find nothing in the former case re-
quiring us to change the views expressed in the Leach case. Further-
more, while not necessary, yet the question being insisted on, we will
examine the position of applicant with reference to the caption of the
charter of the city of Dallas as passed by the Twenty-fifth Legislature,
said caption being entitled "An act to incorporate the city of Dallas, and
grant it a new charter."

Appellant's contention is, that if it be conceded that the Legislature
has the power, in accordance with the view taken by the Supreme Court
in Harris County v. Stewart, supra, to confer jurisdiction upon a munici-
pal court, and so create a State court, the Legislature has not done so in
this instance. Entertaining the view, as we do, that a municipal court is
not a State court, except in a limited sense (that is, a State court for
municipal purposes only), we would expect to find, under the above cap-
tion, not a State court, as a part of the judicial system of the State, but a
municipal court, having jurisdiction and cognizance of matters incidental
to the corporation. In this regard we hold the views expressed in Bless-

ing v. City of Galveston, 42 Texas, 641. As we understand that case, it was an injunction proceeding brought by Blessing and others to restrain the city of Galveston from proceeding in prosecutions alleged to have been commenced by warrants issued by John S. Rhea, claiming to be acting as recorder, under pretense of authority alleged to have been conferred on him by an act of the Legislature incorporating the city of Galveston. Several of the parties had been arrested, and others threatened with arrest, for breach of an ordinance requiring them to pay a license tax on their respective occupations, trades, and professions, and also to enjoin and restrain appellee from the collection of said license tax. The fourth ground urged by complainants against the enforcement of the tax in the city court was that the recorder's court, created by the charter of the city of Galveston, in which the proceedings were had to enforce the penalties for failure to pay said taxes, is not such a judicial tribunal as is warranted by section 1 of article 5 of the Constitution. On this question Judge Moore uses the following language, which we quote in full: "The objection made to the constitutionality of the recorder's court created by the charter has been, in effect, answered by what has been heretofore said. If the Legislature may, by reason of its inherent legislative power, create a municipal corporation for purposes of local government, it seems to follow, as a necessary conclusion, that it may invest with such powers as are necessary and essential for the ends and purposes of its creation. Without the grant of general police powers, and the means of enforcing their respect and observance, the act of incorporation of a town or city would be little better than waste paper. Judicial power of a general character, such as is conferred upon constitutional tribunals, or officers clothed with judicial functions for the general administration of the laws, in contradistinction to local or municipal ordinances and regulations, can not be conferred upon mere corporation courts created to enforce the police powers delegated to such corporations. This seems to be the extent to which we can certainly say, in the absence of the constitutions and statutes applicable to them, that most of the cases cited by appellant clearly go. Some of them, however, seem to lay down a broader rule. We can not consent to give the sections of our Constitution, conferring and distributing the judicial power, so limited and technical a construction and application. We think its language, vesting judicial power 'in such inferior courts and magistrates as may be created in this Constitution, or by the Legislature under its authority,' entirely sufficient to warrant the Legislature, when creating municipal corporations, in the absence of any restriction, to create local municipal tribunals as an essential necessity to the well-being of such local municipal corporations;" citing State v. Young, 3 Kan., 445; Hutchings v. Scott, 9 N. J. Law, 218; Shafer v. Mumma, 17 Md., 381; Mayor, etc., v. Dechart, 32 Md., 369. Here, to our minds, it is very apparent that Judge Moore drew a distinction between State tribunals constituting a part of our judicial system and municipal courts as such. The latter he regarded as merely an incident to the corporation, and with limited powers to enforce municipal ordinances

only. As stated above, we would not expect, under the caption of an act to charter or incorporate a city or town, to find thereunder an article or clause creating a court for other than purely municipal purposes, much less an act creating a State court, or vesting a municipal court with jurisdiction which pertains to a State court. And, if the prosecution in this case was for a State offense as such, we would be inclined to hold that the title of said act does not embrace the subject of creating a State court of the municipal court of the city of Dallas, or of conferring a jurisdiction which pertains to our State courts on said tribunal. On this subject we refer to Wulftange v. McCollom, 83 Ky., 361; Brown v. State, 79 Ga., 324, 4 S. E. Rep., 861; State.v. Kinsella, 14 Minn., 524 (Gil., 395); Holmberg v. Hauck, 16 Neb., 337, 20 N. W. Rep., 279; City of San Antonio v. Gould, 34 Texas, 49; Giddings v. San Antonio, 47 Texas, 556.

However, as stated before, the question here presented to us is whether or not the charter of Dallas confers authority on the city council to make this an offense against the city, and whether or not the Legislature can confer this authority. The charter of the city of Dallas is a special charter, authorized under the Constitution for cities having more than 10,000 population; and by a number of sections, from 48 to 124, inclusive, said charter proposes to confer general powers on the city council to do certain things. Among a number of other things which the city is thus authorized to do, it appears to be authorized by ordinance to make certain acts which are penal offenses under the State laws, offenses against the city. See secs. 83, 84, 86, 87, 89, 92, 93, and 103. All of the other enumerated sections appear to be regarding matters incidental to and growing out of the municipal corporation. Section 103, we presume, contains the provision under which it is contended the city council had authority to pass the ordinance against keeping and exhibiting gaming tables, under which the conviction was had in this case. Said section reads as follows: "To license, tax, and regulate billiard tables, pin alleys, and ball alleys; to suppress, restrain, and regulate and control disorderly houses, tippling shops and groceries, gambling and gaming houses, and games of every kind, lotteries and all fraudulent devices and practices, bawdy houses of prostitution, and to punish all keepers of said houses and exhibitors or players at said games and other things, with the same penalties, fine, and imprisonment as may be inflicted therefor by the statutes of the State of Texas." It would appear therefrom that the Legislature had conferred the power (if it was authorized to do so) on the city council to pass an ordinance making the offense created by the statutes of the State an offense against the State, to wit, the keeping and exhibiting of a gaming table and bank for the purpose of gaming, also an offense against the city; and the only question then is, did the Legislature have the constitutional right, under the Constitution and laws of this State, to confer this power? We would observe here that the general laws of the State (see articles 929-931, Code of Criminal Procedure 1895, inclusive) puts mayors and recorders of cities on the same plane, as to the administration of laws with reference to criminal prosecutions, as justices of the peace, and

vests them with the same power and jurisdiction, and authorizes municipal councils, by ordinances, to create acts which are made penal by State laws also offenses against the city, and to make all prosecutions and convictions under city ordinances good in bar of prosecutions for the same act under State laws, and vice versa. The act here complained of does not come within this category. It is such an offense as a justice of the peace has no jurisdiction to try, but the power to try and punish the same is vested by the Constitution and laws of the State in the county court (see secs. 16 and 19, art. 5, Const.; and see arts. 91 and 96, Code Crim. Proc. 1895); that is, imprisonment in the county jail being a part of the punishment under the State law for this offense, it can only be tried in the county court, same being a court of record. Some authorities hold that where the State law has acted upon a matter, and made the act an offense against the State, the Legislature can not afterwards delegate authority to municipal governments to create the same act an offense against the city. The State having once occupied the territory, the city is excluded from interfering with it. See Mayor, etc., of Savannah v. Hussey, 21 Ga., 80; Wayne Co. v. City of Detroit, 17 Mich., 390; Cool. Const. Lim., 140, 228; 11 Am. and Eng. Enc. of Law, p. 955; 17 Am. and Eng. Enc. of Law, p. 237. The decisions of our State, however, appear to be otherwise, and to authorize municipal corporations to take jurisdiction, and by ordinance create an act which is already a State offense an offense against the city. This seems to be the holding of this court with reference to such offenses as justices of the peace have jurisdiction to try; and in such cases it is held that the ordinance must conform to the State laws in creating the offense and imposing the penalty therefor. See Ex Parte Boland, 11 Texas Crim. App., 159; Flood v. State, 19 Texas Crim. App., 584; Ex Parte Freeland, ante, p. 321; Angerhoffer v. State, 15 Texas Crim. App., 613. There are some decisions of this court which hold that a municipality can, by ordinance, take jurisdiction of offenses which are made such by the laws of this State, and of which the county court has exclusive jurisdiction; and this notwithstanding section 12 of article 5 of the Constitution, which requires that "all prosecutions must be in the name and by authority of the State of Texas, and shall conclude against the peace and dignity of the State." See Ex Parte Wilson, 14 Texas Crim. App., 592. In the Wilson Case, supra, the constitutional provision above mentioned was not discussed at all; nor was it discussed in any case we are aware of, except in Leach v. State, 36 Texas Criminal Reports, 248.

Of course, a great many matters are incidental to municipal corporations, and are not at all violative of State laws, and no question can arise as to ordinances covering said acts. A number of acts are petty offenses, and are covered by State laws, and would appear also to be peculiarly offenses against the municipal government, and incidental to such government, as well as offenses against the State. Our Penal Code defines a petty offense as "one which a justice of the peace or the mayor or other officer of a town or city may try and punish." Penal Code 1895, art. 57.

And this appears to be in consonance with the authorities defining a petty offense. Some of the cases hold that a petty offense can be made an offense against the municipal corporation by ordinance, and can be punished without violating the above provision of the Constitution with reference to prosecutions, while others hold the contrary. See note to State v. Robitshek (Minn.), 33 Law. Rep. Ann., 33 (same case, 61 N. W. Rep., 1023), and authorities there cited; City of Davenport v. Bird, 34 Iowa, 524. In the latter case the action was under an ordinance of the city of Davenport prescribing that "every person who shall unlawfully disturb the public quiet of any street, alley, avenue, public square, market place," etc., "by loud or unusual noise, by blowing horns or other instruments," etc., "shall be guilty of a misdemeanor;" and the fine provided was not less than $3 nor more than $100, and imprisonment until the fine and costs were paid, provided that the imprisonment should not exceed thirty days. It was claimed in that case that said action was a prosecution; that it was not authorized under the Constitution of Iowa, which is similar in its provisions to ours. We quote from that case as follows: "Is it necessary, under the Constitution, that all prosecutions for violations of municipal police ordinances shall be conducted in the name and by the authority of the State of Iowa? Or, in other words, is that clause of the city charter of Davenport which directs 'that all suits, actions, and prosecutions instituted, commenced, or brought by the corporation, shall be instituted, commenced, and prosecuted in the name of the city of Davenport,' in conflict with the constitutional provision before referred to? We are of opinion that it is not. This clause of the Constitution occurs in article 5, which treats of the judicial department of the government. This article vests and defines the judicial power of the State, establishes the tenure of office of the judges, and defines the mode of their election; fixes their salary, and limits the number of judicial districts; provides for the election of an attorney-general, and other matters pertaining to the judicial arm of the State, among which is the clause under consideration. From all this it seems manifest that the requirement that 'all prosecutions shall be conducted in the name and by the authority of the State of Iowa' contemplates such criminal prosecutions as shall be instituted and prosecuted before the tribunals, which are provided for in that article of the Constitution, under the statutes of the State. It is fitting and appropriate that prosecutions for violations of the criminal laws of the State should be carried on in the name of the government. But there is no fitness or propriety in requiring the State to be a party to every petty prosecution under the police regulations of a municipal corporation. Such a construction of this article of the Constitution seems to us unwarranted, and not intended by the framers of the Constitution. It was held by the Supreme Court of Pennsylvania that the word 'process,' in the eleventh section of the fifth article of the Constitution of Pennsylvania, which provides that the style of all process shall be 'The Commonwealth of Pennsylvania,' was intended to refer to such writs only as should become necessary to be issued in the courts of the exercise of that judicial power

which is established and provided for in the article of the Constitution, and forms exclusively the subject matter of it.    3 Pa. St., 99.    See also Sprague v. Birchard, 1 Wis., 457.    On the same principle, we are of opinion that the word 'prosecutions,' in the eighth section of article five of our Constitution, was intended to refer only to such criminal prosecutions, under State laws, as should be cognizable by the judicial power, which is established and provided for in that article, and that it was not intended to include prosecutions under ordinances of municipal corporations, cognizable before local police magistrates.    It follows, therefore, that, in sustaining the demurrer on the first ground stated, the court below erred." This does not appear to have been a State offense by statute. Treating it as a municipal offense merely, it states the correct doctrine. Under the authorities, we are inclined to the view that, in the face of the constitutional provision before quoted, where an offense has been made such by State law, notwithstanding it is a petty offense, it must be prosecuted by authority of the State, and against its peace and dignity.    In this case, however, it is not necessary for us to decide that question, as the offense for which the relator was tried and punished was not a petty offense, but an offense over which the county court, being a court of record, alone had jurisdiction.

Now, the question which presents itself is: Does the fact that the municipal council of Dallas has, by ordinance, created the exhibiting and keeping of a gaming table for the purpose of gaming, an offense against the municipality, relieve it of being a prosecution?    A "prosecution" is defined by our statute to be "the whole or any part of the procedure which the law provides for bringing offenders to justice."    See article 26 of the Penal Code of 1895.    "It is a criminal proceeding at the suit of the government." Tennessee v. Davis, 100 U. S., 269.    A proceeding by a municipal corporation to enforce such fines and penalties as are ordinarily and by usage enforced by them is not criminal in its nature, whatever may be the form of the procedure.    Such proceedings are only quasi criminal, and are not prosecutions.    17 Am. and Eng. Enc. of Law, p. 260, and note; 1 Dill. Mun. Corp., sec. 432; City of Sparta v. Lewis (Tenn. Sup.), 23 S. W. Rep., 183.    As heretofore stated, the conviction in this case would not come in the category of petty offenses, nor an offense merely growing out of and incidental to the municipal government; and, in our opinion, no matter what might be the tribunal or what the character of procedure, the prosecution, under the Constitution and laws of this State, must be carried on in the name and by the authority of the State of Texas, and conclude against its peace and dignity.    The fact that the prosecution was brought under the city ordinance did not deprive it of the characteristic of a prosecution; nor could the Legislature by indirection, as by vesting jurisdiction of the case in some other than a State tribunal, so change the nature of the offense as to take in out of the category which had been affixed to it by State law, of a prosecution for a criminal offense.    And we hold that it was not competent for the municipal council of Dallas, by ordinance, to create the keeping and exhibiting of a gaming table or

bank (which was by the statute an offense against the State) an offense against the city of Dallas; and the prosecution under such ordinance could not be maintained in the face of our Constitution, which prescribes, as before stated, that all prosecutions shall be conducted in the name and by the authority of the State, and shall conclude against the peace and dignity of the State. And we accordingly hold that the relator is entitled to be discharged, and that the costs of this court be taxed against relator; and it is so ordered.

*Relator discharged.*

HURT, Presiding Judge, concurs in result, but dissents as to some of the propositions announced in the opinion.