(No. 34267.—

THE PEOPLE *ex rel.* Allen A. Bell, County Collector, *et al.,* Appellants, *vs.* NEW YORK CENTRAL RAILROAD COMPANY, Appellee.

*Opinion filed March 20, 1957.*

Bristow, J., took no part.

Wayne S. Jones, State's Attorney, and Massey, Anderson & Gibson, both of Paris, (Robert L. Gibson, of counsel,) for appellants.

Marvin A. Jersild, of Chicago, and Ward E. Dillavou, of Paris, for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This case raises the question of whether Paris Union School District No. 95 of Edgar County, a special charter school district, is governed by the provisions of its charter, the School Code, or the Revenue Act, in levying and collecting taxes.

The county treasurer and collector of Edgar County, filed petition for judgment and order of sale against lots and lands upon which taxes were delinquent for the year 1954. Defendant paid its taxes under protest, filed objections to such judgment and sale, and contended that the tax rate extended for the school district was excessive to the extent of .632, being the amount that it exceeded a rate of .516.

The parties to this litigation agreed that the school district was created by special act of the legislature of Illinois, approved March 26, 1869 (Private Laws of 1869, vol. 3, p. 488 *et seq.*); that said act or charter has never been specifically amended except to provide for a board of education consisting of seven, rather than six, members; that the school district has never adopted article 7 of the School Code (Ill. Rev. Stat. 1953, chap. 122, par. 7—23); that the school district held the following elections, purportedly under and in compliance with the general school laws of Illinois: (a) on April 21, 1927, which authorized (1) the construction of a new school building, (2) the issuance of $50,000 of school building bonds, (3) an increase in the building tax rate to 1¾% and (4) an increase in the educational tax rate to 2½%, (b) on April 10, 1937, which authorized an increase in the educational rate to 2%, (c) on September 26, 1940, which authorized the issuance of $100,000 of school building bonds, (d) on September 21, 1948, which authorized an increase in the educational tax rate from .51% to .91%, and (e) on May 17, 1952, which authorized the issuance of $275,000 of school building bonds; that subsequent to the election of September 21,

1948, authorizing an increase in the educational tax rate to .91%, the school district adopted a resolution pursuant to the provisions of the School Code (Ill. Rev. Stat. 1951, chap. 122, par. 17—5.2) establishing a rate limitation for educational purposes at 1%, which resolution was filed in the office of the county clerk of Edgar County, and no referendum has ever been held to approve said rate; that if the maximum statutory rate limit for 1945 was 2%, then the formula rate computed in accordance with section 162a of the Revenue Act (Ill. Rev. Stat. 1951, chap. 120, par. 643a) is .516; and that defendant does not object to the school district being a party to this proceeding.

The county clerk of Edgar County extended the following tax rates for the school district for the year 1954: educational rate 1.000; building rate .123; Illinois Municipal Retirement Fund rate .025; total 1.148; bond and interest rate .103; grand total 1.251. The building and Illinois municipal retirement fund rates are within the statutory limitations, if it is determined that the school district is governed in matters of taxation by article 17 of the School Code. (Ill. Rev. Stat. 1953, chap. 122, p. 1140.) The special charter contains no authorization for an increase in tax rate by referendum. The defendant objected to the rate of 1.148 which was extended for all purposes exclusive of bonds and interest, and argued that if the school district was not governed in the levy and collection of taxes by the provisions of the School Code, then it was controlled by its charter tax rate of 2% of the assessed valuation of the taxable property within said district; that the charter tax rate was subject to the provisions of the Revenue Act (Ill. Rev. Stat. 1953, chap. 120, pars. 643a and 643b); and that under the formula provided, this rate of 2% was reduced to .516. The defendant further contends that the election held on September 21, 1948, under which the educational rate of the school district was increased from .51 to .91, was invalid, in that under subsection (3) of

section 162a of the Revenue Act (Ill. Rev. Stat. 1947, chap, 120, par. 643a(3),) an increase in rate submitted at that election could not exceed 25 per cent. If the defendant is correct in this contention, then the rate of 1.148 was excessive in the amount of .632, and when applied to the value of the objector's property in said district this allegedly excessive rate would produce an illegal tax of $5091.10. The defendant further contended, in the alternative, that in event the school district is governed by the provisions of the School Code (Ill. Rev. Stat. 1951, chap. 122, art. 17) then the referendum held on September 21, 1948, was valid and the legal tax rate thereby established for educational purposes was .91; and that the educational rate of $1 would be excessive in the sum of .09, which excessive rate when applied to the valuation of the objector's property in the district would produce an illegal tax of $725.

The defendant argues, and we agree, that the resolution of the school district, adopted subsequent to the aforementioned referendum and filed with the county clerk of Edgar County, is void for the reason that the School Code (Ill. Rev. Stat. 1951, chap. 122, par. 17—5.2) specifically exempts from its provisions all tax rates which have been established by referendum held after December 31, 1945.

The county court sustained the objection of the defendant in the sum of $725, denied the petition of the collector for judgment in that amount, and overruled the objection in the sum of $4277.49. Pursuant to motion, the school district was authorized to become a party to this proceeding, and the county treasurer and the school district appealed from the order of the county court sustaining said tax objections in the sum of $725, and the defendant filed a cross appeal, assigning as error the failure of the county court to sustain its objection in the sum of $5091.10.

The school district urged that by special charter it was authorized to levy taxes for school purposes in any one

year not to exceed 2% of the assessed valuation of the property of the district; that it must elect to come within the terms of the general school law pursuant to the provisions of the School Code (Ill. Rev. Stat. 1953, chap. 122, pars. 7—23 and 32—1); that absent such election neither the School Code nor the Revenue Act apply to a special charter school district; that a special act of the legislature is not repealed by a subsequent general law unless such general law expressly repeals the special act or removes matters from under its operation; and that even if the school district had been subject to the provisions of the Revenue Act in levying and collecting taxes, after December 31, 1952, all school districts were excepted from the provisions of sections 162a and 162b of the Revenue Act (Ill. Rev. Stat. 1953, chap. 120, pars. 643a and 643b), and thereby the provisions of the special charter relative to the prevailing tax rate would be revived.

Section 1 of article VIII of the constitution of 1870 requires that "The general assembly shall provide a thorough and efficient system of free schools, whereby all children of this state may receive a good common school education," and subsequent sections of this article contain broad general principles pertaining to the establishment and operation of such system of schools. The legislature created Paris Union School District by special act under the constitution of 1848. The constitution of 1870 proscribed the enactment of special laws. (Const. of 1870, art. IV, sec. 22.) However, it validated existing charters by providing that "All existing charters or grants of special or exclusive privileges, under which organization shall not have taken place, or which shall not have been in operation within ten days from the time this constitution takes effect, shall thereafter have no validity or effect whatever" (Const. of 1870, art. XI, sec. 2,) and "That no inconvenience may arise from the alterations and amendments made in the constitution of this state, and to carry the same

into complete effect, it is hereby ordained and declared: § 1. That all laws in force at the adoption of this constitution, not inconsistent therewith, and all rights, actions, prosecutions, claims, and contracts of this state, individuals, or bodies corporate, shall continue to be as valid as if this constitution had not been adopted." (Const. of 1870, Schedule and section 1 thereof.) Prior to 1870, there was no constitutional provision in regard to schools and no express duty or limitation was imposed on the legislature concerning them. (*Scown* v. *Czarnecki, 264* Ill. 305, 320.) In obedience to its constitutional mandate, the legislature revised the school law in 1872, 1889, 1891, 1909 and 1919 (*People ex rel. Knecht* v. *Chicago and Eastern Illinois Railroad Co.* 300 Ill. 218), all of which revisions made provision for the levying of a tax for educational and for building purposes inconsistent with the provisions of the special charter of Paris Union School District. In 1945 the legislature codified the general school law and entitled this enactment "The School Code."

Section 7 of article 16 of the revision of the School Law of 1891 provided that such act should not repeal special acts in connection with schools, except that in every such district the limit of taxation for educational and building purposes shall be that fixed in section 1 of article 8 of this act, (Laws of 1891, p. 197); and the law of 1909 contained the same exception. (*People ex rel. Knecht* v. *Chicago and Eastern Illinois Railroad Co.* 300 Ill. 218, 220.) The School Code is silent in this respect.

Since the granting of the special charter to the school district herein, the legislature, in 1909 and 1945, drastically revised the revenue laws pertaining to tax rates and the assessment of property. This legislation is commonly referred to as the Juul Law (Laws of 1909, p. 323,) and the Butler Laws (Ill. Rev. Stat. 1953, chap. 120, pars. 643, 643a, 643b, and 643c.) Prior to these respective enact-

ments, the assessment officers throughout the State were not assessing property at its full value in compliance with the law, and there was a wide variance in the ratio of assessed value to full value of taxable property between the various counties, and within such counties. In taxing units of low valuation, necessary revenues for governmental purposes were lacking, and where high valuations prevailed, excess revenue was within the reach of the taxing unit. Confusion and inequalities prevailed, particularly with respect to the distribution of State funds to aid local governmental units. The general plan of each of these enactments was uniformity and full value assessment, with lower and uniform tax rates for the various taxing bodies, such rates being subject to legislative limitation and referendum by the voters of the taxing unit. These enactments withstood the constitutional attacks of the day. *Booth* v. *Opel,* 244 Ill. 317; *Town of Cicero* v. *Haas,* 244 Ill. 551; *Anderson* v. *City of Park Ridge,* 396 Ill. 235.

The school district contends that the provision of its special charter, authorizing a 2 per cent annual tax for school purposes, stands unaltered. We must determine whether the revisions of the school and revenue laws pertaining to the levy and collection of taxes, repealed the inconsistent provision of the special charter with reference to the governing tax rate of the school district.

The primary object of statutory construction is to ascertain and give effect to legislative intent, and courts should consider the reason or necessity for the enactment, the contemporaneous conditions, existing circumstances, and the object sought to be obtained by the statute. (*Petterson* v. *City of Naperville,* 9 Ill.2d 233.) The provisions of a special act may be amended or repealed by a general act, either expressly or by implication from the inconsistency between the two acts where the legislative intention to repeal or modify the provisions of the special act clearly

appears. *People ex rel. Knecht* v. *Chicago and Eastern Illinois Railroad Co.* 300 Ill. 218, 220; *Dutton* v. *City of Aurora,* 114 Ill. 138, 145.

Lack of uniformity in tax rates and the assessment of property was the catalyst which brought forth the Juul and Butler laws. We cannot believe that the legislature, which intended to bring about full value assessment and scale down excessive tax rates accordingly, would exempt from its purpose special charter taxing agencies, and thereby approve for them tax rates far in excess of those provided under these enactments.

The revisions of the school and revenue laws with reference to the levy and collection of taxes, in our opinion, have repealed expressly where so provided, and otherwise by implication, the inconsistent provisions of special acts of the legislature concerning the levy and collection of taxes. (*People ex rel. Knecht* v. *Chicago and Eastern Illinois Railroad Co.* 300 Ill. 218; *Dutton* v. *City of Aurora,* 114 Ill. 138.) These revisions and the codification of the school law evince a legislative intent to substitute the pertinent revenue provisions of these enactments for the inconsistent provisions of the special charter, although some of these enactments contain no express words to that effect. *Illinois Central Railroad Co.* v. *Commerce Com.* 397 Ill. 387, 394; *Illinois Central Railroad Co.* v. *Franklin County,* 387 Ill. 301, 310 and 311; *People ex rel. Deneen* v. *Town of Thornton,* 186 Ill. 162, 172 and 173; *People ex rel Burdick* v. *Board of Education,* 166 Ill. 388, 397.

Section 7—23 of the School Code authorizes a special charter school district, by vote, to adopt the provisions of article 7; and section 32—1 furnishes similar authority for a special charter school district to organize under the general school law. (Ill. Rev. Stat. 1953, chap. 122, pars. 7—23 and 32—1.) However, these provisions of the School Code do not sustain the school district's contention that absent an election to come within the provisions

of the School Code the special charter prevails. Both the special charter and the general school laws pertain to the maintenance and operation of schools. Such acts, be they general or special, which relate to the same subject or object, are *in pari materia* although they were enacted at different times. "It is a primary rule of statutory construction that not only should the intention of the legislature be deduced from a view of the whole statute and from its every material part, but statutes *in pari materia* should be construed together." *People ex rel. Harrell* v. *Baltimore and Ohio Railroad Co.* 411 Ill. 55, 59; *People ex rel. Tilley* v. *New York, Chicago and St. Louis Railroad Co.* 364 Ill. 456; *People* v. *Wallace*, 291 Ill. 465. Cf. *Rosehill Cemetery Co.* v. *Lueder*, 406 Ill. 458, 465 and 466.

The special charter in question is brief, contains broad principles to accomplish the result sought, but is inadequate for the operation and maintenance of the schools of the school district. The enactment of general laws relating to the maintenance and operation of public schools would not abrogate the provisions of special charters, not inconsistent with such general laws. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Randle*, 183 Ill. 364.) The special charter of this school district contained none of the provisions of the School Code relative to flat grants, equalization aid, issuance of tax warrants; referendum for increase in tax rates and for authority to build school buildings and issue bonds for the costs thereof, certification of teachers, tenure for teachers, and retirement of teachers with pensions, yet the school district undoubtedly operates under and receives the benefits of these provisions of the School Code. In fact, without election to do so, special charter school districts, of necessity, operate under many of the provisions of the general school law. There is and must be an accommodation between the not inconsistent provisions of the special charter and general law. The district in question operated under the general school or

revenue laws when it held five successive elections for authorization to issue school building bonds, build new school buildings, and increase both building and educational fund tax rates. The special charter furnished no authorization for these elections, and the school district by its conduct has elected to come under these provisions of the general school and revenue laws.

The uniform and long continued practice of this school district in levying taxes, issuing bonds, and increasing building and educational tax rates under the general provisions of the school and revenue laws is a factor to be considered by this court in determining whether such district is governed, in levying and collecting taxes, by the provisions of the general school and revenue laws, or by its inconsistent special charter. (Cf. *McNely* v. *Board of Education,* 9 Ill.2d 143; *Mississippi River Fuel Corp.* v. *Commerce Com.* 1 Ill.2d 509; *People* v. *Illinois Central Railroad Co.* 273 Ill. 220.) The school district cannot now repudiate that part of the general school law under which it has operated and which it presently deems less beneficial than a conflicting and inconsistent provision of its special charter.

The school district herein has likewise urged that, even if it had been subject to the provisions of the Revenue Act in levying and collecting taxes, after December 31, 1952, all school districts were excepted from the provisions of sections 162a and 162b of the Revenue Act (Ill. Rev. Stat. 1953, chap. 120, pars. 643a and 643b,) and thereby the provisions of the special charter relative to its prevailing tax rate would be revived. We cannot agree with this argument. Under this contention, the legislature, by the adoption of sections 162a and 162b, enacted by revival the provisions of the special charter establishing an annual tax rate of 2 per cent for school purposes in this school district. Section 22 of article IV of the constitution prohibits the enactment of such special law. The legislature cannot accomplish by revival or indirection that which

it could not do directly, and we do not ascribe to it such intention. It will never be presumed that the legislature intended to enact laws violative of the constitution, and if the purposes of an act can be fully carried out by a construction which will not bring it within the proscriptions of the constitution, that construction will be adopted. The school district herein is governed by the provisions of the School Code in levying and collecting taxes.

The judgment of the county court is affirmed in all respects.                              *Judgment affirmed.*

Mr. JUSTICE BRISTOW took no part in the consideration or decision of this case.