City of Champaign, a Municipal Corporation, Plaintiff-Appellant, v. John P. Hill et al., Defendants-Appellees.

## Gen. No. 10,319.

Third District.

February 21, 1961.

Rehearing denied May 2, 1961.

430

Albert Tuxhorn, City Attorney, and Charles L. Palmer, Assistant City Attorney, of Champaign, for appellant.

Robert W. McDonald, State's Attorney, of Urbana, for appellees.

REYNOLDS, J.

This is an action asking for a declaratory judgment construing and interpreting Section 235, Subsection (a) 1, Article XVII of the Uniform Act Regulating Traffic, Chapter 95½, Illinois Revised Statutes. The plaintiff is a municipal corporation, and the defendants are the County Clerk, County Treasurer and State's Attorney of Champaign County, Illinois. The cause arose when one William Fox was arrested within the city limits of the plaintiff city, by plaintiff's police officers. One of the plaintiff's officers signed an information charging the said Fox with operating a motor vehicle while under the influence of intoxicating liquors, in violation of the Uniform Act Regulating Traffic. The defendant Fox pleaded guilty and was convicted of the charge in the County Court of Champaign County, fined $100.00 and the fine was paid to the County Clerk of the County. Plaintiff city claims the fine money under the provisions and terms of said Section 235, Subsection (a) 1. Demand was made upon the defendants for the fine money and they refused to pay it over to the city. Thereupon suit was instituted by the city for the construction

and interpretation of the Statute by means of a declaratory judgment. The trial court allowed a motion by the defendants to dismiss the complaint of the city, but this order was subsequently vacated and judgment was finally entered by the trial court denying plaintiff's motion for a summary judgment, and barring the city from further action in the case. From that order the plaintiff appeals to this court.

It is not questioned that the violation occurred within the city limits, or that the city officers followed the case by one of them signing a criminal information in the county court, charging the defendant Fox with driving while intoxicated. The only question thus presented to this court is the construction of the language of the section in question, namely Section 235(a) 1, of Chapter 95½ Illinois Revised Statutes. The language of the section in dispute is as follows:

"235 #138. Disposition of fines and forfeitures.
(a) Fines and penalties recovered under the provisions of this Act shall be paid over and used as follows:

1. For offenses committed upon a highway within the limits of a city, village or incorporated town or under the jurisdiction of any park district, to the treasurer of the particular city, village, incorporated town or park district, if the violator was arrested by the authorities of the city, village, incorporated town or park district, provided the police officers and officials of cities, villages, incorporated towns and park districts shall seasonably prosecute for all fines and penalties under this Act. If the violation is prosecuted by the authorities of the county, any fines or penalties

recovered shall be paid to the County Treasurer."

The subsection in question was part of the original motor vehicle act enacted in 1935. The original form of the subsection provided that fines and penalties recovered under the Act, for offenses committed upon a highway within the limits of a city, village, incorporated town, or under the jurisdiction of a park district should be paid over to the treasurer of the particular city, village, incorporated town or park district.

In 1941, the subsection was amended to only apply to traffic violations committed within the limits of a city, village or incorporated town of 500,000 or more population.

In 1943, the subsection was amended, by taking out the 500,000 or more population requirement, and adding that the violator must be arrested by the authorities of the city, village, incorporated town or park district, and further requiring that the officials of the city, village, incorporated town or park district should seasonably prosecute for all fines and penalties under the act.

In 1951, the subsection was amended and the part that the local officials must make the arrest was dropped.

In 1953, the subsection was amended and the part requiring the arrest by local officials was again put in the subsection.

In all the amendments beginning with 1943, the subsection contained a provision that if the violation was prosecuted by the authorities of the county, any fines or penalties recovered should be paid to the County Treasurer.

So far as this court can determine the exact question involved here has not been presented to any court

in Illinois. Until the City of Champaign brought the instant suit, no city, village, incorporated town or park district has disputed the right of the County to retain the fines assessed under the Motor Vehicle Act, and this case presents a matter of first impression in Illinois. The place of the violation is fixed and does not admit of any dispute, i.e., it must be committed upon a highway within the limits of the city, village, or incorporated town, or under the jurisdiction of a park district. Here, the violation occurred within the city limits of Champaign. The arrest must be made by the authorities of the city, village, incorporated town or park district. The police officers of Champaign made the arrest. The police officers and officials of cities, villages, incorporated towns and park districts must seasonably prosecute for the fines and penalties. If the violation is prosecuted by the authorities of the county, the fine or penalties recovered shall be paid to the County Treasurer.

The question is thus narrowed to the construction of the words, "provided the police officers and officials of cities, villages, incorporated towns and park districts shall seasonably prosecute for all fines and penalties under this Act." The word "seasonably" relates only to time and that is not in dispute here, so the question is further narrowed to the interpretation and construction of the word "prosecute", as used in the subsection.

The trial court in denying the plaintiff's motion for summary judgment did not discuss the court's reason for denying the motion, except to state that the court interpreted the statute under consideration to the effect that there was no right of recovery of the fine in the City of Champaign. Judgment was entered for the defendants and against the plaintiff city in bar of the action and the city was forever barred from further prosecution in the case.

435

Webster's New International Dictionary, Second Edition, defines "prosecute" in the following language: "Law, (a) To seek to obtain, enforce, or the like, by legal process; as, to *prosecute* a right or claim in a court of law. (b) To pursue (a person) by legal proceedings for redress or punishment; to proceed against judicially; esp., to accuse of some crime or breach of law, or to pursue for redress or punishment of a crime or violation of law, in due legal form before a legal tribunal; as, to *prosecute* a man for trespass, or for a riot." The same dictionary also defines "prosecute" as follows: "To institute and carry on a legal suit or prosecution; to sue; as, to *prosecute* for public offenses."

Webster's New Collegiate Dictionary defines "prosecute" as follows: "Prosecute—to follow, pursue. 1. To follow to the end; to pursue until finished; as to prosecute the investigation. 2. To engage in; to carry on; as, he will continue to prosecute his practice of the law. 3. Law. a. To seek to obtain, enforce, or the like, by legal process; as, to prosecute a claim. b. To pursue (a person) by legal proceedings for redress or punishment, esp. because of some crime or breach of law.—v.i. Law. To institute and carry on a legal suit or prosecution; to sue."

The case of O'Dea v. Throm, 332 Ill. 89, 91, 163 N. E. 390, says: "Webster's International Dictionary defines 'prosecution' as 'the institution and carrying on of a suit or proceeding in a court of law or equity to obtain or enforce some right or to redress and punish some wrong; the carrying on of a judicial proceeding on behalf of a complaining party.' "

One of the earliest definitions of "prosecution" appears in Donnelly v. The People, 11 Ill. 552, 553, where the court said: "In its broadest sense, the word 'prosecutions' would embrace all proceedings in the courts of justice, or even elsewhere, for the pro-

tection or enforcement of a right or the punishment of a wrong, whether of a public or private character. The word, as here used, however, has not that comprehensive meaning, but signifies prosecutions of a public or criminal character. When used in this sense, it means the mode of the formal accusation of offenders, and this may be by presentment, information or indictment."

The case of State v. Froelich, 316 Ill. 77, 146 N. E. 733, in construing the meaning of the word "prosecutions" as used in the constitution, holds that the word as used in the constitutional provision signifies only prosecutions of a public or criminal character and concerns the formal accusation of offenders by presentment or indictment by a grand jury or by information. That case cites People v. Gartenstein, 248 Ill. 546, 94 N. E. 128; Moutray v. People ex rel. Morris, 162 Ill. 194, 44 N. E. 496, and Donnelly v. People, 11 Ill. 552. In the case of People v. Gartenstein, at page 551, the court said: "In criminal law a prosecution is the institution and continuance of a criminal proceeding, as by indictment or information."

The case of Wall v. Chesapeake & O. Ry. Co., 290 Ill. 227, 233, 125 N. E. 20, defines "prosecution" as follows: "To prosecute a suit is to proceed against a party judicially. It is the act of conducting or waging a proceeding in court. (State v. District Court, 19 N. D. 819.) To prosecute an action includes not only the bringing but the carrying on of the action. (Inhabitants of Great Barrington v. Gibbons, 199 Mass. 527; Cheshire v. Des Moines City Railway Co. 153 Iowa, 88.) The term 'prosecute' means to bring a suit in a court for the redress of a wrong; to carry on a judicial proceeding against another or to seek to enforce a claim or right by legal process. (Western Electric Co. v. Pickett, 51 Colo. 415.) The bringing of an action is the beginning of a suit; the prosecu-

437

tion of the action is the further conduct of the suit. Whenever the legislature declares that no action shall be 'brought' or 'prosecuted', it is presumed that it intended each phrase to have its distinct meaning, else there was no occasion to use both. Buecker v. Carr, 60 N. J. Eq. 300."

The case of People v. Jilovsky, 334 Ill. 536, 538, 2 N.E.2d 317, reiterates the definition of "prosecutions" as used in the constitution to mean only prosecutions of a public or criminal character, and concern the formal accusation of offenders by presentment or indictment by a grand jury or by information.

A prosecution is defined to be the institution or commencement and continuance of a criminal suit; the process of exhibiting formal charges against an offender before a legal tribunal, and pursuing them to final judgment. Corbin v. The People, 52 Ill. App. 355, 356.

"Prosecution" is defined to be the whole or any part of the procedure which the law provides for bringing offenders to justice. Ex parte Fagg, 44 S. W. 294, 297, 38 Tex. Cr. R. 573. Prosecution is the institution or commencement of a criminal suit; the process of exhibiting formal charges against an offender before a legal tribunal, and pursuing them to final judgment on behalf of the state or government, or by indictment or information. A prosecution exists until termination in the final judgment of the court, to-wit, the sentence. Territory v. Nelson, 2 Wyo. 346, 352. The word "prosecute" includes a conviction under a plea of guilty, where the officer performs the preliminary duties in instituting the prosecution and attends the trial for the purpose of conducting the prosecution. Brown v. Welch, 235 S. W. 997, 151 Ark. 142.

438

■ ■ Summing up the various constructions our courts and those of other jurisdictions have placed upon the words "prosecute" and "prosecution" no clear-cut definition can be reached. If we would follow the definition of "prosecutions" in State v. Froelich, 316 Ill. 77, 146 N. E. 733, and People v. Jilovsky, 334 Ill. 536, 2 N.E.2d 317, where the word as used in the constitution was under consideration, the prosecution would involve only the formal accusation of the offender by means of an information, as used here. The case of Wall v. Chesapeake & O. Ry. Co. 290 Ill. 227, 125 N. E. 20, would separate the institution of the suit, from the prosecution. If we accept the definition in that case, there would be no right of the city officers or officials to prosecute a criminal proceeding to punish the traffic violator, since neither the police officers or the city officials may usurp the duties and powers of the State's Attorney. Here the officers of the Champaign Police Department arrested the violator, signed an information upon which the names of the two arresting officers were endorsed and appeared in court as witnesses. Whether there was a municipal ordinance for driving while intoxicated, is not important here, since the basis of this suit is for a violation of the Statute. The fact that the city officers first filed a complaint in the office of the Police Magistrate of Champaign is likewise not important for the same reason. To prosecute under the traffic act, they must go to a court of record, since the punishment set out in the act for the specific violation charged, driving while intoxicated, carried a penalty of a fine of not less than $100 nor more than $1000, or by imprisonment of not less than 2 days nor more than 1 year, or by both such fine and imprisonment. This constituted a misdemeanor cognizable only in a court with the author-

ity to impose the maximum penalty set out in the Statute. This could not be done in a justice's court, or a Police Magistrate's court. The justice has jurisdiction in cases of misdemeanor, where the punishment is by fine of not to exceed five hundred dollars, and imprisonment for one year. Article XVIII, Section 165, Chapter 79, Illinois Statutes. The Police Magistrate has concurrent jurisdiction with justices, and no more. Article VI, Section 21, Illinois Constitution 1870. Since the violation here was a violation under the Statute, was a misdemeanor outside the jurisdiction of a justice or police magistrate, must be instituted in a court of record, and must be brought in the name of The People of the State of Illinois, it is obvious that the police officers of the City of Champaign did all they legally could do. The further prosecution devolved upon the State's Attorney. Defendants contend in their argument that the only interpretation that can be given to the statute in question and give effect as a whole is, that the City of Champaign has the right to bring an action in the name of the city against a defendant for a violation of the Uniform Act Regulating Traffic on Highways. They say that such a procedure would be for the city police officer to arrest the offender within the city limits for a violation of the Act and for the police officer, city attorney or other city official to file a charge in either the Circuit, County or Police Magistrate's Court where said charge is brought in the name of the city against the defendant for the violation of the Act and that the city conduct the prosecution of such case. They say that in this way, the State's Attorney would have nothing to do with the prosecution, as the prosecution would not be conducted in the name of The People of the State of Illinois, but rather in the name of the city. The fallacy of this argument is apparent. The violation is

440

one of misdemeanor, punishable by fine and imprisonment, the fine being outside the jurisdiction of a justice or a police magistrate. The charge is a criminal charge and must be filed in the name of The People of the State of Illinois. Article VI, Section 33, Constitution of Illinois 1870, provides "all prosecutions shall be carried on: *In the name and by the authority of the People of the State of Illinois;*" and the Act itself, declares violations of the traffic laws to be misdemeanors or felonies, in the following language: "It is a misdemeanor for any person to violate any of the provisions of this Act unless such violation is by this Act or other law of this State declared to be a felony." Section 234, Uniform Act Regulating Traffic on Highways, Chapter 95½, Ill. Rev. Statutes. The prosecution under the Act in the present instance, must be in a court having jurisdiction, namely the County Court or the Circuit Court. It must be commenced and carried on in the name of the People of the State of Illinois. It was commenced and instituted by the officers of the City of Champaign. The handling of the case in court should be by the State's Attorney. This includes the filing of the information and the attendance of the State's Attorney in court, the presentation of the witnesses and the following up of the case. This cannot be done by the city, by the city officers or anyone other than the State's Attorney. He is charged with the duty of prosecuting criminal actions in which the people of the state may be concerned. Chapter 14, Section 5. (First) Illinois Revised Statutes. But, do the actions of the State's Attorney, imposed upon him by law, constitute the "prosecution" as used in the subsection involved here, or does the prosecution also involve, the actions of the police officers in arresting, signing the information and appearing as witnesses? If the acts of the police officers do not constitute a part of the prosecu-

tion, then there is no method for the local officials or officers of a city to prosecute for a violation of the Act regulating traffic on highways. If "prosecution" is to be limited to the actual trial of the case, the conduct of the trial, the presentation of witnesses for the People, the cross-examination of witnesses for the defense, and the argument for the People, then with such narrow limitation, only the State's Attorney could prosecute.

█ This case being a case of first impression, the opinions of Illinois Attorney Generals on the subject must be given considerable weight. Illinois Attorney General's Opinion No. 7, 1949, (Ivan A. Elliott) is directly in point. In that opinion the Attorney General says: "When the offense is committed within the limits of a city, village or incorporated town, Subdivision 1, Sub-paragraph (a) of Section 235 provides that the fine assessed for such offense shall be paid to the treasurer of the particular village, etc., provided, however, that the violator was arrested and prosecuted by the authorities and officials of such village, etc.

"It is my opinion that the term 'prosecute' as used in said Subdivision 1, contemplates the making of the arrest, the initiating of the complaint, and appearance as prosecuting witness rather than the formal conduct of the proceeding.

"The fact that the State's Attorney might appear to conduct the proceedings would not, in the instance wherein the authorities of the city, village or incorporated town have made the arrest, signed the complaint and appeared as prosecuting witnesses, deprive the city, village or incorporated town of the right to receive the fine. The legislative intent was to encourage enforcement of the Uniform Traffic Act by providing that fines imposed for violations committed within the limits of a city, village or incorporated

442

town be payable to the treasurer of such city, village or incorporated town.

"Therefore, when the officers or authorities of the city, village or incorporated town have taken all the steps within their authority in connection with the prosecution of an offense, that is, made the arrest, filed the complaint, and appeared as prosecuting witness, then a fine imposed for such offense should be paid to the treasurer of such city, village or incorporated town."

Illinois Attorney General's Opinion No. 78, 1953, (Latham Castle) on the same question says: "It is therefore my opinion, in answer to your first question, that the prosecution of an offense, within the meaning and scope of clause (1), does not include the formal conduct of the court proceedings, but includes arrest, signing of a complaint for warrant or signing of an information, and appearance of a witness in court. If these steps are taken by the police officers or officials of a municipality or park district for offenses committed within the limits of the municipality or jurisdiction of a park district, the municipality or park district is entitled to receive the fine collected irrespective of whether or not the State's Attorney appeared in court to conduct the proceedings.

"I am further of the opinion that it is not necessary, in order for a local municipality to qualify for collection of a particular fine, that no other authority, such as the State's Attorney, shall have any hand in the prosecution, if the violator was arrested by the municipal authorities and if the police officers or officials of such municipalities had a complaint or information signed and appeared as prosecuting witnesses."

The defendants say that these opinions of the Attorney General are not supported by any authority, and this is true. Yet they are the legal opinions

of the chief law officer of the State of Illinois on the precise question before this court, and will be accorded considerable weight.

Our courts have said many times, in interpreting and construing statutes and the words of statutes, that the intention of the legislature must be given great weight. The language of the case of Pliakos v. Illinois Liquor Control Commission, 11 Ill. 2d 456, 143 N.E.2d 47, at pages 459 and 460, lays down this rule in these words: "It is well established that in the construction of statutes, the courts start with the assumption that the legislature intended to enact an effective law, and the legislature is not to. be presumed to have done a vain thing in the enactment of a statute. Hence, it is a general principle, embodied in the maxim, *'ut res magis valeat quam pereat,'* that the courts should, if reasonably possible to do so without violence to the spirit and language of an act, so interpret the statute, or the provision being construed, as to give it efficient operation and effect as a whole. An interpretation should, if possible, be avoided, under which the statute or provision being construed is defeated, or as otherwise expressed, nullified, destroyed, emasculated, repealed, explained away, or rendered insignificant, meaningless, inoperative, or nugatory." The case of Hoyne v. Danisch, 264 Ill. 467, 106 N. E. 341, at page 483, discusses interpretation of statutes. The court there says: "The intention of the law-makers is the law. This intention is to be gathered from the necessity or reason of the enactment and the meaning of the words, enlarged or restricted according to their real intent. (Cruse v. Aden, 127 Ill. 231.) In determining the meaning of a statute the court will always have regard to existing circumstances, contemporaneous conditions, the objects sought to be attained by the statute and the necessity or want of necessity for

444

its adoption. (People v. Kipley, 171 Ill. 44.) In seeking for such an intention we are to consider the language used by the legislature, the evil to be remedied and the object to be attained. (Hogan v. Akin, 181 Ill. 448). In construing a statute the courts are not confined to the literal meaning of the words. A thing within the intention is regarded within the statute though not within the letter. A thing within the letter is not within the statute if not within the intention. When the intention can be collected from the statute, words may be modified or altered so as to obviate all inconsistency with such intention. (Krome v. Halbert, 263 Ill. 172.)"

██ ██ It is a primary rule of statutory construction that not only should the intention of the legislature be deduced from a view of the whole statute and from its every material part, but statutes in pari materia should be construed together. People v. Baltimore & O. R. Co., 411 Ill. 55, 59, 103 N.E.2d 76; People v. New York Cent. R. Co., 10 Ill. 2d 612, 621, 141 N.E.2d 38. For that reason the laws governing and pertaining to the duty imposed upon the State's Attorney, the jurisdiction of police magistrates, the penalty imposed by the Statute for violation of the traffic laws, constitutional provisions and any law in pari materia must be considered in construing the subsection in question.

As a guide to this court in construing the subsection involved, the language of Lincoln Nat. Life Ins. Co. v. McCarthy, 10 Ill. 2d, 489, 140 N.E.2d 687, beginning on page 494 is helpful. There the court said: "A statute or ordinance must be construed according to its intent and meaning, and a situation that is within the object, spirit and meaning of the statute is regarded as within the statute, although not within the letter; and a situation that is within the letter is not regarded as within the statute unless also with-

in its object, spirit and meaning. People ex rel. Barrett v. Thillens, 400 Ill. 224. Although the terms of section 409(3) when used separately may bring to the mind of the corporate lawyer certain forms and procedures, we repair to the wisdom of Judge Learned Hand as stated in Cabell v. Markham, (CCA2d) 148 F.2d 737, 739: 'But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.' " If the intention of the legislatures of Illinois was to allot to municipalities the fines for violations of the Uniform Act Regulating Traffic on Highways occurring within the limits of the municipalities, then the requirement that the municipality must seasonably prosecute must be given the object, spirit and meaning of the law as enacted and to accomplish its real purpose.

In the original section as enacted in 1935 and in the subsequent amendments, there seems to be a definite pattern by the legislature to divide and apportion the fines and penalties collected for violations of the Uniform Act in Relation to the Regulation of Traffic, between cities, villages, incorporated towns and park districts as one class, road districts or townships as another class, and counties as another class, and in the case of overweight violations to the State, the division apparently to be based upon the place of the violation, with certain duties imposed upon the officials of the political subdivision in which the offense occurred. If these duties were met by the officials of the political subdivision, then it would seem to be the intention of the legislature to give the fines and penalties collected to that political subdivision where the offense or violation occurred.

As said in Hoyne v. Danisch, 264 Ill. 467, 106 N. E. 341, at page 484: "When the intention can be collected from the statute, words may be modified or altered so as to obviate all inconsistency with such intention." What was the intention of the legislature of 1935? The section then simply provided that where the offense occurred within the limits of a city, village, incorporated town, the fines and penalties recovered for violation of the traffic code should be paid to the Treasurer of the city, village, incorporated town, or park district in which the violation occurred. There is nothing in the amendments of 1941, 1943, 1951 and 1953 to indicate that the legislatures of those years intended any change in this division of the fines and penalties, except that the legislatures in those years added certain duties on the part of the cities, villages, incorporated towns and park districts before they would be entitled to the fines and penalties. In Hoyne v. Danisch, 264 Ill. 467, 106 N. E. 341, the court said the intention of the legislature is to be determined by considering the language used, the evil to be remedied and the object to be attained. It seems clear to this court that the intention of the legislature was in the beginning to divide geographically. Later, the local municipality was required to work for their share of the fines and penalties, namely by arresting the offender and prosecuting the case to conclusion. As said in Pliakos v. Illinois Liquor Control Commission, 11 Ill. 2d 456, 143 N.E.2d 47, at page 459: "It is well established that in the construction of statutes, the courts start with the assumption that the legislature intended to enact an effective law, and the legislature is not to be presumed to have done a vain thing in the enactment of a statute." It should not be presumed in this case, that the legislature in requiring that the city should seasonably prosecute

447

for all fines and penalties under the Act, intended to require the city to do something which, by the law of Illinois, it could not do. The more reasonable explanation and construction would be that the legislature in requiring the arrest by the city's officers, and the prosecution by the city, meant only that the officers of the city should do all things they could legally do by law to effect the punishment of offenders for violation within the city limits, of the traffic laws of the State of Illinois. The law imposed a duty upon the State's Attorney to conduct the prosecution. But as this court interprets the word "prosecute" as used in subsection (a) 1 of the Act, it only means that the city officers and officials shall do all things necessary, legal and proper for them to do to bring offenders to justice. Beyond that they could not go and to hold that the word "prosecute" means assuming the duties of the State's Attorney, would distort the word beyond recognition as it is used in the subsection in question. The dictionaries use the word "pursue". Here the police officers of the City of Champaign pursued the offender as far as they might legally go. They arrested him, signed an information against him, and appeared as witnesses at his trial. To construe the word "prosecute" as used in the subsection to mean that the legislature meant to require the police officers to do something they could not legally do, would certainly, paraphrasing the language of Pliakos v. Illinois Liquor Control Commission, 11 Ill.2d 456, 143 N.E.2d 47, be enacting an ineffective law, and doing a vain thing. Again referring to the language of the Pliakos v. Illinois Liquor Control Commission case, the interpretation in this case if reasonably possible to do so without violence to the spirit and language of the act, is to so interpret the subsection as to give it efficient operation. An interpretation should be avoided, if possible,

which would defeat, nullify, destroy, emasculate, explain away, render insignificant, or negate the word being construed. To interpret that the legislature intended by the use of the word "prosecute" as used in the subsection to impose a duty upon the city officers and officials they could not legally perform, would render all the language of the subsection relating to cities, villages, incorporated towns and park districts, meaningless, and ineffective. The same reasoning would also apply to road districts or townships, and would mean that only the county or the State could retain fines imposed for violation of traffic laws under the Act, without regard to where the violation occurred. We do not believe that construction to have been the intention of the legislature. Rather, since the whole of this case revolves around construction and interpretation of the word "prosecute" we are constrained to hold that the intent of the legislature, in the initial enactment of the subsection and subsequent amendments, meant the word to mean only the common, everyday use of the word, and only intended to require that the city officers pursue the offender as far as they might legally go. It seems clear to this court that the continued provision in the subsection that certain fines might be paid to the city treasurer, within the limitations imposed by the subsection, was a clear indication that the legislature intended in 1935, and in the years of the amendments, to give to the cities, villages, incorporated towns and park districts, subject to their officials performing certain specified duties, the right to receive the fines for violations of the Uniform Act to Regulate Traffic on Highways, when the violation occurred within the limits of such political subdivision. To hold otherwise would be to hold that all the language of the section, insofar as it applies to cities, villages, incorporated towns, park districts, townships or road districts is

449

meaningless, inapplicable and inoperative. To hold otherwise would be to destroy any right on the part of these political subdivisions to receive fines under the Act. We do not believe the legislature of 1935, or the legislatures of the years 1943, 1951 and 1953 so intended.

We therefore hold, in accordance with the two opinions of the Attorney General of Illinois heretofore cited, that the word "prosecute" does not include the formal conduct of the court proceeding, but does include the arrest, signing of a complaint for warrant or signing of an information and appearance as witness in court. We must further hold that if these things and acts are performed by the municipal authorities, and the offense is committed within the limits of the municipality, the municipality is entitled to receive the fine collected, irrespective of the actions of the State's Attorney. In so holding, this court believes that it is construing the word "prosecute" in accordance with the spirit and intent of the legislature. This court has no right to legislate but only to interpret the laws as legislated.

The judgment for the defendants is therefore reversed and the cause is remanded with instructions to vacate the judgment entered in behalf of the defendants and to enter summary judgment for the plaintiff.

Reversed and remanded with directions.

CARROLL, P. J. and ROETH, J., concur.