THE CITY OF URBANA *et al.*, Plaintiffs, *v.* BETTY J. MALLOW, Clerk of the Circuit Court, Champaign County, Defendant.—(THE COUNTY OF CHAMPAIGN, Defendant-Counterplaintiff, *v.* BETTY J. MALLOW, Clerk of the Circuit Court, Champaign County, Counterdefendant;—BETTY J. MALLOW, Clerk of the Circuit Court, Champaign County, Defendant-Counterplaintiff, *v.* THE CITY OF URBANA *et al.*, Counterdefendants;—THE COUNTY OF CHAMPAIGN, Appellant, *v.* THE CITY OF URBANA *et al.*, Appellees.)

Fourth District   No. 13073

Opinion filed November 10, 1976.

BARRY, J., specially concurring.

James R. Burgess, Jr., State's Attorney, of Urbana (Robert G. Frederick and John R. DeLaMar, Assistant State's Attorneys, of counsel), for appellant.

Jack Waaler and Albert Tuxhorn, City Attorneys, and James W. Evans, Assistant City Attorney, all of Champaign, and Robert E. Turnbow, Village Attorney, of Rantoul, for appellees.

Mr. JUSTICE STENGEL delivered the opinion of the court:

The county of Champaign appeals from a judgment order declaring that a municipality is entitled to receive the fines and forfeitures collected for violations of State traffic laws committed within its boundaries where the State's Attorney conducts the prosecution if the municipality has not obtained the State's Attorney's permission to prosecute such violations.

On April 1, 1974, the State's Attorney of Champaign County directed the circuit clerk, Betty Mallow, to pay all fines and forfeitures in city traffic cases to the county treasurer, since no municipal attorney had requested permission to prosecute State violations. Thereafter the municipalities of Urbana, Champaign and Rantoul joined in bringing this declaratory judgment action to determine whether an amendment to section 16—102 of the Motor Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 16—102), effective January 1, 1974, also was intended to change section 16—105 of the Code which provided for fines and forfeitures to be paid to the municipality in State traffic offenses occurring within a city where court proceedings are conducted by the State's Attorney. The circuit clerk interpleaded and paid the disputed funds into the court. The county of Champaign was allowed to intervene with a counterclaim asserting the county's right to the disputed fines.

The trial court held that the amendment to section 16—102 was not

intended to change the disposition of fines and penalties under section 16—105, but was enacted to give municipalities an opportunity to proceed with prosecution when in their opinion that was necessary for more effective law enforcement. This appeal followed.

Section 16—105 of the Motor Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par 16—105) provides:

"(a) Fines and penalties recovered under the provisions of Chapters 11 through 16 inclusive of this Act shall be paid and used as follows:

1. For offenses committed upon a highway within the limits of a city, * * * to the treasurer of the particular city, * * * if the violator was arrested by the authorities of the city, * * * provided the police officers and officials of cities, * * * shall seasonably prosecute for all fines and penalties under this Act. If the violation is prosecuted by the authorities of the county, any fines or penalties recovered shall be paid to the county treasurer."

Before 1974, section 16—102 of the Code (Ill. Rev. Stat. 1973, ch. 95½, par. 16—102) provided in part:

"The State's Attorney of the county in which the violation occurs shall prosecute all violations * * *."

In 1961 a dispute arose as to who "prosecuted" a traffic case, within the meaning of section 16—105, where a city police officer made the arrest, signed the complaint, and appeared as a witness in a trial conducted by the State's Attorney. The court held that the word "prosecute" in section 16—105 did not mean the formal conduct of court proceedings but instead meant pursuing the offender as far as legally possible. Since section 16—102 did not permit a municipal attorney to engage in court proceedings, the municipality was entitled to the fine in cases where the city police officer made the arrest, signed the charge, and appeared as a witness against the violator. *City of Champaign v. Hill* (3d Dist. 1961), 29 Ill. App. 2d 429, 173 N.E.2d 839; see also *City of Rockford v. Watson* (2d Dist. 1969), 108 Ill. App. 2d 146, 246 N.E.2d 458.

Section 16—102, as amended (Ill. Rev. Stat. 1975, ch. 95½, par. 16—102), now provides:

"The State's Attorney of the county in which the violation occurs shall prosecute all violations *except when the violation occurs within the corporate limits of a municipality, the municipal attorney may prosecute if written permission to do so is obtained from the State's Attorney.*" (Emphasis added.)

Two recent decisions have construed this amendment to section 16—102. In *City of Decatur v. Curry* (4th Dist. 1976), 39 Ill. App. 3d 799, 350 N.E.2d 816, the State's Attorney sent an unsolicited letter to the Decatur city attorney granting permission to prosecute State traffic offenses

occurring within the city. Thereafter, the State's Attorney continued to appear in all such traffic cases requiring an appearance, and all fines collected in such cases were paid to the county, even though city police officers made the arrests and appeared in court. The city brought suit requesting, *inter alia,* payment of more than $50,000 in fines collected by the county.

After noting that the city had not revoked or refused the grant of permission to conduct court proceedings, the court stated:

> "We hold that when the State's attorney of a county has tendered or granted to a municipality within the county and of the type listed in Section 16—105 permission for its attorney to prosecute offenses listed in that section, and the State's attorney is required, because of the failure of that municipal attorney to do so, to appear and prosecute such an offense in either the circuit or appellate court, any fines or penalties recovered in that case, which would otherwise be paid to the municipality shall be paid to the county. *In all other cases, fines and penalties shall be distributed as heretofore.*" (Emphasis added.) 39 Ill. App. 3d 799, 804, 350 N.E.2d 816, 820.

Shortly after the *Decatur* decision, another dispute involving the municipalities of Urbana, Champaign and Rantoul was resolved in *City of. Urbana v. Burgess* (4th Dist. 1976), 40 Ill. App. 3d 244, 351 N.E.2d 607. In *Urbana,* the State's Attorney had unilaterally granted permission to the municipalities to prosecute traffic violations, but the municipalities had expressly refused to accept such responsibility. The court held that section 16—102, as amended, does not permit unilateral delegation or prosecutorial responsibility from the State's Attorney to municipal officials. Thus when a municipality neither requests nor accepts a grant of authority to prosecute court proceedings in traffic cases, it remains the statutory duty of the State's Attorney to appear in such cases.

The case before us was commenced before State's Attorney Burgess authorized the municipal attorneys of Urbana, Champaign, and Rantoul to prosecute traffic cases. Therefore the dispute here is limited to the disposition of fines and penalties received before the State's Attorney's letter of permission to the municipalities which resulted in the *Urbana* litigation.

It is of course impossible to know with certainty what the legislature intended when it amended section 16—102. Although *City of Decatur v. Curry* held that the disposition of fees and fines has been changed if a municipality receives permission to prosecute State traffic offenders but the city attorney fails to appear, we believe there are also good reasons for concluding that no change was intended, as the trial judge did here. According to either view, the result in this case would be the same since,

at the time this suit was commenced, prosecution of State traffic cases in Champaign County was continuing on the same basis as before the section 16—102 amendment.

■■ Under section 16—105, as interpreted by *City of Champaign v. Hill* (3d Dist. 1961), 29 Ill. App. 2d 429, 173 N.E.2d 839, the municipalities are entitled to the fines and penalties here in dispute, and judgment of the trial court is affirmed. Nothing contained in either the *Decatur* or the *Urbana* decision would compel a different result.

■■ The municipalities also contend that the amendment to section 16—102 violates the constitutional provision for the election of State's Attorneys (Ill. Const. 1970, art. 6, §19), by creating a quasi State's Attorney who is not elected. This interesting argument was not presented or considered in the trial court and may not be raised for the first time on appeal. (*Department of Public Works v. Schon* (1969), 42 Ill. 2d 537, 250 N.E.2d 135; *Benson v. Isaacs* (1961), 22 Ill. 2d 606, 610, 177 N.E.2d 209.) Hence, the constitutional issue is not properly before us.

Accordingly, we affirm the judgment of the Circuit Court of Champaign County.

Affirmed.

ALLOY, P. J., concurs.

Mr. JUSTICE BARRY, specially concurring:

While agreeing with the result reached by the majority, I do not join in all the reasoning and comments otherwise therein.

I approve of the holding by the majority in *Urbana v. Burgess,* (4th Dist. 1976), 40 Ill. App. 3d 244, 246, 351 N.E.2d 607, 609: "[W]e conclude that the present statute does not permit a State's Attorney to unilaterally delegate such responsibility, and that such may not be imposed absent a request or an acceptance by the municipal authorities," but I disagree with the suggestion of the special concurring in *Urbana* that "The State's Attorney can now, however, unilaterally authorize a municipal attorney to prosecute * * * [and] his refusal to do so means the municipality is not entitled to the fine." (40 Ill. App. 3d 244, 248, 351 N.E.2d 607, 610.) I also specifically disapprove of *City of Decatur v. Curry* (4th Dist. 1976), 39 Ill. App. 3d 799, 350 N.E.2d 816, believing it to be based upon a false premise, that is, based upon the reasoning rather than the holding in *City of Champaign v. Hill* (3d Dist. 1961), 29 Ill. App. 2d 429, 173 N.E.2d 839.

The last substantive paragraph of the 10-page *Hill* opinion (29 Ill. App. 2d 429, 450, 173 N.E.2d 839, 849) recites the holding:

"We therefore *hold,* in accordance with the two opinions of the Attorney General of Illinois heretofore cited, that the word

'prosecute' does not include the formal conduct of the court proceeding, but does include the arrest, signing of a complaint for warrant or signing of an information and appearance as witness in court. We must further *hold* that if these things and acts are performed by the municipal authorities, and the offense is committed within the limits of the municipality, the municipality is entitled to receive the fine collected, irrespective of the actions of the State's Attorney. In so *holding*, this court believes that it is construing the word 'prosecute' in accordance with the spirit and intent of the legislature. This court has no right to legislate but only to interpret the laws as legislated."[1] (Emphasis added.)

The question then presented is what is the effect of the 1974 legislative change to section 16—102 of the Motor Vehicle Code (Ill. Rev. Stat. 1975, ch. 95½, par. 16—102) applied to section 16—105 of the Code in light of the *Hill* precedent. In the instant case the trial court held that the amendment to section 16—102 is not intended to change the disposition of fines and penalties under section 16—105, but was enacted to give municipalities an opportunity to proceed with prosecution when in their opinion that was necessary for more effective law enforcement. By my view the words of the amendment of section 16—102 obviously demand that holding. The legislative language is certainly permissive, not mandatory:

"[T]he municipal attorney *may* prosecute *if* written *permission* to do so is *obtained from* the State's Attorney." (Emphasis added.)

I read the language simply to mean that the municipal attorney can now do with permission, if he so requests, what he could not do prior to the amendment of section 16—102. The words very strongly imply that the activity or request should flow, if desired, from the municipal attorney to the State's Attorney, *from* whom *written permission* is *obtained*. I do not see any mandatory substantive legislative change imputed to section 16—105 by this section 16—102 amendatory language. I interpret the legislature's inaction in not changing or amending section 16—105 as an approval of the court's holding in *Hill*. Certainly it is logical to assume that the legislature would have amended or clarified section 16—105 in light of *Hill* while amending section 16—102 if there was legislative intention to do so.

Keeping in mind that in the construction of statutes the courts start with the assumption that the legislature intended to enact an effective law and that if reasonably possible no violence should be done to the spirit and

---

[1] The phrase "seasonably prosecute" was also explained by *Hill* (29 Ill. App. 2d 429, 435, 173 N.E.2d 839, 842): "The word 'seasonably' relates only to time and that is not in dispute here, so the question is further narrowed to the interpretation and construction of the word 'prosecute', as used in the subsection."

language of an *act*, I read the legislative history of section 16—105 and of section 16—102 as not indicative of any change of legislative purpose. Historically it appears the real purpose of the legislature was to allot to municipalities and to other local units of government the fines for traffic violations (with some exceptions) occurring within the limits of the muncipalities, or other political subdivisions. Consistently, *where* the offense occurred has been the primary prerequisite. This pattern of sharing by legislative dictate commenced with the original Motor Vehicle Act in 1935, and there is nothing in the amendments of 1941, 1943, 1951, 1953 and thereafter (even subsequent to *Hill)* to indicate the legislature intended any change in the policy. Since the 1943 amendment to the section that is now section 16—105, *all* municipalities, not just cities over 500,000 population, have been legislatively mandated to have the fines and forfeitures for offenses committed within their boundaries, not just benefiting cities over 500,000. It should be recalled that the 1943 amendment was prior to *Hill,* and as was indicated earlier, there has been no legislative change since.[2]

The lack of amendment to section 16—105 indicates that the intention of the legislature was to maintain the status quo as to the financial benefits and duties regarding political subdivisions and their officers in other ways. For example the fines and forfeitures resulting from most traffic tickets issued by the state police outside political subdivisions continue to be paid to the county. Perhaps more worthy of note, the county prosecutor is limited to a 10-percent fee for in court prosecution of over-weight fines, and it has been so both prior and subsequent to *Hill,* and prior and subsequent to the amendment to section 16—102. See section 16—105(2); that subsection does not even demand that township officials need "seasonably prosecute" or do anything at all in return for the fines and forfeitures the legislature intends for them to receive when there is an offense committed upon a township road.

It appears from *Curry* that $50,000 was involved for the City of Decatur, population about 100,000, in just a few months, that 75 percent of the cases were concluded without a court appearance, and therefore the prosecutor's office needed to appear in only 25 percent of the cases there. It is evident that considerable moneys can be involved. However to hold as did *Curry,* the county, and the State's Attorney's office, would benefit irrespective of whether the State's Attorney would even need to appear, and perhaps to follow *Curry* to a conclusion, irrespective of whether a park district, for example, or a village for that matter, could afford to engage a prosecutor.

It seems clear that the amendments to the predecessor of section 16—

---

[2] "[T]he proper function of the courts is to enforce the statute as enacted." *General Motors Corp. v. Industrial Com.,* 62 Ill. 2d 106, 112, 338 N.E.2d 561, 564.

105 in 1943 and prior thereto, and the lack of change in section 16—105 since, reflects the accommodation to the various municipalities, and other units of local government, within the State, which have differing volumes of traffic violations, varying quality and quantity of local enforcement officers, and law departments ranging from formidable staffs to no regular attorney engaged at all. By my view the amendment of section 16—102 and the lack of amendment to section 16—105 by the legislature allows for the efficient and preferred operation as will accommodate particular circumstances, but certainly does not suggest the imposition of a new duty upon a perhaps nonexistent local prosecutor.

Since all the opinions agree that the sole prosecutorial jurisdiction and responsibility resides in the county State's Attorney, it would seem the observation in *Hill* (29 Ill. App. 2d 429, 441, 173 N.E.2d 839, 845) is as appropriate today as it was then: "The handling of the case in court should be by the State's Attorney." Since *Hill* the Judicial Article of 1964 has commenced a new improved system of justice in Illinois which was designed to coordinate the devotion of full-time professionals. Toward that end the State through the legislature has undertaken to pay, and relieve the counties, of many of the costs, most significant of which is most of the salaries of the judges and State's Attorneys. The net effect has been to do away with the uncertain quality of the former local justice system. It would appear therefore that the legislature through its implementation of that Judicial Article would intend the State's Attorneys to in fact more than supervise the quality of prosecution within the county; that the legislature by its inactivity with regard to section 16—105 intended for the benefit of the fines and forfeitures to be of secondary consideration, but to remain with the local units of government, both large and small, to supply the necessary revenues for the engaging of police personnel to arrest, sign complaints, testify, and in effect, "seasonably prosecute," and I attach no importance to whether the State's Attorney is said to authorize, tender, grant, or delegate, or whether the local prosecutor refuses or rejects by any method. The all important consideration by my view as interpreted by the majority in *Urbana* is whether the local prosecutor requests the authority to act, or otherwise formally and unquestionably accepts the chore.

I believe the consistent "holdings", *i.e.*, the 1943 and last amendment to section 16—105, the Illinois Attorney General's Opinions No. 7, 1949 and No. 78, 1953, the 1961 *Hill* case, and the majority in *Urbana,* confirm that the duty to prosecute in the courtroom should not be unilaterally delegated to local prosecutors.